**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ROBERT SANDERS,** | § | |
| *Plaintiff*, | § | **CIVIL ACTION NO.: 4:22-cv-01523** |
| | § | |
| **v.** | § | |
| | § | |
| **REGIONS BANK** | § | |
| | § | **JURY DEMANDED** |
| *Defendant*. | § | |

---

**PLAINTIFF ROBERT SANDERS' RESPONSE IN OPPOSITION TO DEFENDANT
REGIONS BANK'S MOTION FOR SUMMARY JUDGMENT**

---

Dated: August 21, 2023                    Respectfully submitted,



_____
**Alfonso Kennard Jr.**
Texas Bar No.: 24036888
Southern District No.: 713316
Alfonso.Kennard@kennardlaw.com
**Eddie Hodges Jr.**
Texas Bar No. 24116523
S.D. ID. 3479748
5120 Woodway Dr., Suite 10010
Houston, Texas 77056
T: (713) 742-0900
F: (713) 742-0951
eddie.hodges@kennardlaw.com
**ATTORNEYS FOR PLAINTIFF**

## TABLE OF CONTENTS

Contents

SUMMARY OF THE ARGUMENT ....................................................................... 1

NATURE OF THE PROCEEDINGS ..................................................................... 3

MATERIAL FACT ISSUES PRESENTED ............................................................ 3

STATEMENT OF MATERIAL FACTS ................................................................ 3

   A.  PLAINTIFF JOINS REGIONS IN 2012. ..................................................... 3

   B.  IN 2018, REGIONS ASSIGNS PLAINTIFF A NEW MANAGER, DAVE LEONARD, WHO BEGAN TO MAKE DISPARAGING AND DISCRIMINATORY ACTS TOWARDS PLAINTIFF. ........................... 4

   C.  IN JANUARY 2021, MELISSA MIRANDA FILED AN INTERNAL COMPLAINT AGAINST PLAINTIFF AFTER PLAINTIFF RATED HER PREVIOUS YEAR PERFORMANCE. ........................... 5

   D.  IN FEBRUARY 2021, PLAINTIFF FILED AN INTERNAL COMPLAINT OF RACE DISCRIMINATION AND RETALIATION AGAINST DAVE LEONARD AND MELISSA MIRANDA. ..... 7

   E.  REGION'S REASONING FOR TERMINATION IS PRETEXT, GIVEN THAT DAVE LEONARD'S BIAS TOWARDS PLAINTIFF WAS INFLUENCED BY DISCRIMINATORY MOTIVES BASED ON PLAINTIFF'S RACE. LEONARD, BODINE, AND MUMMERT'S ACTIONS TO TERMINATE PLAINTIFF CREATE CREDIBILITY ISSUES FOR A JURY TO ASSESS. ............................................. 8

SUMMARY JUDGMENT STANDARD OF REVIEW ........................................... 10

ARGUMENTS AND AUTHORITIES ................................................................... 12

   A.  THE TWC'S FAILURE TO ISSUE THE NOTICE OF PLAINTIFF'S RIGHT TO FILE A CIVIL ACTION DOES NOT AFFECT THE PLAINTIFF'S RIGHT UNDER TCHRA TO BRING A CIVIL ACTION AGAINST THE DEFENDANT BECAUSE IT WAS FILED WITHIN TWO YEARS OF THE EEOC CHARGE AND PLAINTIFF ALLOWED THE EEOC AND TWC, 180 DAYS BEFORE FILING SUIT, TO DISMISS THE COMPLAINT OR RESOLVE THE COMPLAINT. .................................................. 12

   B.  PLAINTIFF CAN ESTABLISH A *PRIMA FACIE* CASE OF RACE DISCRIMINATION BASED ON CIRCUMSTANTIAL EVIDENCE UNDER TCHRA. ................................................... 13

      *1.  THERE IS A QUESTION OF FACT REGARDING WHETHER PLAINTIFF'S RACE WAS A MOTIVATING FACTOR IN REGION'S TERMINATION OF HIM.* ....................... 16

      *2.  Genuine issues of material fact exist as to whether Defendant's stated reasons for termination are unworthy of credence, given that Mr. Leonard, Ms. Mummert, and Ms. Bodine developed discriminatory motives to terminate Plaintiff, and Regions failed to investigate Plaintiff's internal complaints in a similar fashion.* ............................................ 18

   C.  PLAINTIFF CAN ESTABLISH A PRIMA FACIE CASE OF RETALIATION UNDER TCHRA. ... 19

      *1.  Plaintiff engaged in protected activity based on his February 2021 internal complaint and his EEOC charge filed in May 2021.* ............................................................. 20

      *2.  Genuine issues of material fact exist as to whether Plaintiff suffered adverse employment action as a result of his protected activity.* ..................................................... 20

      *3.  Genuine issues of material fact exist as to the causal connection between Plaintiff's multiple complaints and his subsequent adverse employment action.* ................................. 21

*4.    Genuine issues of material fact exist as to whether Plaintiff's termination was pretextual given that Defendant failed to follow its own policy.* .......................................... 22

**CONCLUSION** ....................................................................................................................... **23**

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                                                        **PAGE(S)**

*Alayton v. Delta Air Lines. Inc.,*
59 SW3d 283 (Tex.App.--Waco 2001)………………………………………………….. 11

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ……………………………………………………………………... 10, 11

*AutoZone, Inc. v. Reyes,*
272 S.W.3d 588 (Tex.2008) ………………………………………………………….. 15

*Banks v. E. Baton Rouge Parish Sch. Bd.,*
320 F.3d 570 (5th Cir. 2003) …………………………………………………………… 20

*Burch v. City of Nacogdoches,*
174 F.3d 615 (5th Cir.1999) ………………………………………………………….... 11

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) …………………………………………………………………… 10

*Dibidale of Louisiana, Inc. v. American Bank & Trust Co.,*
916 F.2d 300 (5th Cir. 1990) …………………………………………………………... 11

*Gee v. Principi,*
289 F.3d 342 (5th Cir. 2002) ………………………………………………………… 19, 20

*Glasmire v. Public Storage,*
2013 WL 1890363 (N.D. Tex. 2013) …………………………………………………… 19

*Glover-Dorsey v. University of Tex. Med. Branch,*
147 F. Supp. 2d 656 (S.D. Tex. 2001) ………………………………………………… 10

*Gorman v. Verizon Wireless Tex., L.L.C.,*
753 F.3d 165 (5th Cir. 2014) …………………………………………...………………… 13

*Goudeau v. National Oilwell Varco, L.P.,*
793 F.3rd 470 (5th Cir. 2015) ……………………………………………………….. 17

*International Shortstop. Inc. v. Rally's Inc.,*
939 F.2d 1257 (5th Cir. 1991) …………..…………………………………………..……… 10

*Laxton v. Gap Inc.,*
333 F.3d 572 (5th Cir. 2003) …………………………...……………………….. 16, 17

*McCoy v. City of Shreveport,*
492 F.3d 551 (5th Cir. 2007) ………………………………………………………16, 20

*McDonnell v. Thompson Newspapers. Inc.,*
802 F.Supp. 1484 (E.D.Tex. 1992) …………………………………………………… 10

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) ………………………………………………………………... 14, 15

*Mission Consol. Indep. Sch. Dist. v. Garcia,*
372 S.W.3d 629 (Tex.2012) ………………………………………………………… 14

*Nasti v. CIBA Specialty Chemicals Corp.,*
492 F.3d 589 (5th Cir. 2007) ……………………………………………………….. 19

*Nichols v. Loral Vought Sys. Corp.,*
81 F.3d 38 (5th Cir. 1996) ………………………………………………………….. 15

*NME Hosps., Inc. v. Rennels,*
994 S.W.2d 142 (Tex. 1999) …………………………………………………………... 14

*Pegram v. Honeywell, Inc.,*
361 F.3d 272 (5th Cir. 2004) …………………………………………………………  16

*Price Waterhouse v. Hopkins,*
490 U.S. 228 (1989) …………………..………………………………………………… 14

*Quantum Chem. Corp. v. Toennies,*
47 S.W.3d 473 (Tex.2001) ……………………..………………………………… 14, 15

*Raggs v. Mississippi Power & Light Co.,*
278 F.3d 463 (5th Cir. 2002) ……………………………………………….………   18

*Ramirez v. Landry's Seafood,*
280 F.3d 576 (5th Cir. 2002) …………………………………………………………... 19

*Reeves v. Sanderson Plumbing Products, Inc.,*
530 U.S. 133 (2000) ………………………………………………………………11, 15, 19

*Rice v. Russell–Stanley, L.P.,*
131 S.W.3d 510 (Tex.App.-Waco 2004, pet. denied) …………...…………………………... 12

*Russell v. McKinney Hosp. Venture,*
235 F.3d 219 (5th Cir. 2000) ……………………………………………………………….... 17

*Sandstad v. CB Richard Ellis, Inc.,*
309 F.3d 893 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003) …………...……………......... 17

*Stinnett v. Williamson County Sheriff's Dep't,*
858 S.W.2d 573 (Tex.App.—Austin 1993, writ denied) …………….……………………… 13

*Tex. Dep't of Cmty. Affairs v. Burdine,*
450 U.S. 248 (1981) ……………………………………………………………………. 14

*Thornbrough v. Columbus & G.R. Co..*
760 F.2d 633 (5th Cir. 1985) …………..…………………………...……………………... 10

*Waffle House, Inc. v. Williams,*
313 S.W.3d 796 (Tex. 2010) …………………………………………………………..  12

*Waggoner v. City of Garland. Texas.*
987 F.2d 1160 (5th Cir. 1993) ..………………………………………………………  10

## Rules and Statutes

Texas Labor Code (TCHRA), § 21.051 – 21.055

Fᴇᴅ. R. Cɪᴠ. P. 56(c)

## <u>EXHIBIT LIST</u>

Exhibit A   →   Robert Sanders' Deposition Transcript

Exhibit B   →   Robert Sanders' EEOC Documents

Exhibit C   →   Regions' Code of Business Ethics and Conduct

Exhibit D   →   Regions' Investigation Form and Investigation Results

Exhibit E   →   Plaintiff's Expense Report and Receipts

Exhibit F   →    Melissa Miranda Employment Information

Exhibit G   →   Plaintiff's Termination Emails

Exhibit H   →   Plaintiff's EDD Information and Emails

**NOW COMES**, Plaintiff Robert Sanders (hereinafter "Mr. Sanders" or "Plaintiff") files this Response in Opposition to Defendant Region Bank's (hereinafter "Defendant" or "Regions") Motion for Summary Judgment respectfully requesting the Honorable Court to **DENY** Defendant's Motion in its entirety for the following reasons:

## SUMMARY OF THE ARGUMENT

Defendant's Motion for Summary Judgment should be **DENIED** because Plaintiff has established his burden of a *prima facie* case of race discrimination and retaliation under the Texas Labor Code by at minimum circumstantial evidence. Plaintiff has circumstantial evidence of material fact disputes as to Defendant's motivating factor and pretextual termination. In July 2012, Plaintiff was hired by Regions as the Vice President - Branch Manager. Upon being placed under new supervision, Plaintiff was berated, targeted, retaliated against, and discriminated against by the Consumer Banking Manager Mr. Dave Leonard, who conspired with Plaintiff's subordinates Ms. Melissa Miranda and Mr. Jared Ogburn.

There is circumstantial evidence that Plaintiff's race and protected activity were a motivating factor in the decision to terminate Plaintiff based on: (i) the disparate treatment Plaintiff faced based on his race (i.e. internal complaints made by Plaintiff, were not treated or investigated in the same fashion as Plaintiff leading to his termination); (ii) the close proximity in time between Plaintiff's internal complaint, his cease-and-desist letter, EEOC Charge, and the decision to terminate Plaintiff; and (iii) the inferences that can be made showing the decisionmakers had knowledge of Plaintiff's protected activity and used improper criterion to serve as a basis for Plaintiff's termination. Moreover, the evidence demonstrates that similarly situated non-African American employees were treated more favorably because Regions failed to handle the complaint asserted against Dave Leonard (Caucasian) and Melissa Miranda (Hispanic) in the same manner

1

or equally, as the complaints against Plaintiff which demonstrates disparate treatment. Similarly situated individuals, outside of Plaintiff's protected class were treated more favorably than him, and it is evidenced by the investigation notes, documents, reports, Plaintiff being interviewed multiple times, and multiple witnesses being interviewed in regard to the complaints against Plaintiff, but similar efforts were not being made in regard to Plaintiff's complaint of discrimination.

Furthermore, evidence exists that demonstrates that Region's explanation for termination is unworthy of credence. After learning Plaintiff filed an internal complaint referencing Dave Leonard discriminating against him because of his race and Melissa Miranda retaliating against him for his previous performance reviews; Plaintiff was terminated, by Dave Leonard, Melody Bodine, and Erin Mummert. Genuine issues of material fact exist as to whether Leonard, Bodine, or Mummert's, influence or leverage, was motivated by a discriminatory or retaliatory animus, which was the proximate cause of the ultimate employment decision to terminate Plaintiff.

Plaintiff also asserts that genuine issues of material fact do exist as to whether Plaintiff's termination was pretext, given the fact that Mummert's testimony that she had no reason to believe Dave Leonard had knowledge of Plaintiff's complaints against him is speculative and inferences can be drawn that Leonard, Bodine, and Mummert all made the ultimate decision to terminate Plaintiff (not just Leonard). The summary judgment evidence is clear that Regions conspired to make it appear that Plaintiff violated numerous policies, to justify the termination of Plaintiff's employment and to forego investigating any internal complaint filed by Plaintiff based on race discrimination and disparate treatment. Based on the material fact issues presented in the response below, summary judgment should be **DENIED**.

## NATURE OF THE PROCEEDINGS

Plaintiff filed suit against Defendant alleging race discrimination and retaliation under the Texas Labor Code § 21.051 and 21.055 ("TCHRA"). Defendant filed their Motion for Summary Judgment on July 31, 2023. Plaintiff has filed this response timely according to the Federal Rules. Fed. R. Civ. P. 56(c).

## MATERIAL FACT ISSUES PRESENTED

1. Whether a reasonable factfinder could find that Plaintiff suffered adverse employment action because of his race given that the evidence creates an inference that Regions failed to similarly investigate claims against Dave Leonard (Caucasian) and Melissa Miranda (Hispanic) and a discriminatory motive was developed and influenced by Dave Leonard based on a continuous history of disparate treatment, ultimately leading to Plaintiff's termination? These genuine factual issues preclude summary judgment because evidence exists that Defendant's actions were materially adverse.

2. Whether Plaintiff's February 2021 complaint against Dave Leonard for discrimination based on race the contributing factor to Defendant's adverse employment actions against Plaintiff given that Plaintiff was terminated, and inferences can be made that each of the decisionmakers had knowledge of Plaintiff's internal race discrimination complaint but failed to investigate in a similar fashion and terminated Plaintiff without fully investigating his allegations? These genuine factual issues preclude summary judgment. Defendant's conflicting explanations and admissions create factual issues as to whether Defendant can justify Plaintiff's termination based the fact that the decisionmaker's had retaliatory and discriminatory motives, which preclude summary judgment.

## STATEMENT OF MATERIAL FACTS

### A. Plaintiff joins Regions in 2012.

Plaintiff was employed by Regions Bank ("Defendant") as Vice President / Branch Manager VI starting in July 2012.[1] Plaintiff was denied multiple opportunities to become the Branch Manager for any of the new nexus *de novo* branches within the Missouri City or Sugar

---

[1] **Exhibit A** – 51:14-25; 180:2-14.

Land markets.[2] Plaintiff continuously expressed interest in these positions to his supervisor, Ms. Mary McDonnell (Consumer Banking Manger).[3] McDonnell remained Plaintiff's supervisor until 2018 when Dave Leonard ("Mr. Leonard") became Plaintiff's immediate supervisor.[4] Throughout his employment, with Regions Bank, Plaintiff has suffered disparaging and discriminatory acts, directly from Dave Leonard (hereinafter "Mr. Leonard"), Consumer Banking Manager, which have seriously affected his daily life, mental and physical health.[5]

## B. In 2018, Regions assigns Plaintiff a new manager, Dave Leonard, who began to make disparaging and discriminatory acts towards Plaintiff.

Once Mr. Leonard became Plaintiff's direct supervisor, in 2018, Mr. Leonard only completed two (2) branch visits to the Sugar Land branch within 3 years. Anytime that Mr. Leonard planned to visit Plaintiff's team; Mr. Leonard would cancel and/or reschedule, even though CBM's are required to visit all their branches at least once per quarter.[6] In 2018-2019, Plaintiff expressed to Mr. Leonard that he was interested in the several open positions for the *de novo* branches, and during this time Mr. Leonard would have in-person interviews with several candidates, yet downplayed Plaintiff chance by denying him the opportunity for an in-person interview.[7]

Mr. Leonard also pressured Plaintiff to hire Jared Ogburn (Caucasian), as a Financial Relationship Specialist, who immediately showed signs of concerns and poor performance.[8] Jared Ogburn would even take it a step further and make representations at Plaintiff's branch that he was the new branch manager, even though he was Plaintiff's direct report who was rubber-stamped by

---

[2] **Exhibit A** – 85-92.
[3] *Id.*
[4] *Id.*
[5] **Exhibit A** – 197:14-25l 198:1-5. Plaintiff was diagnosed with high blood pressure, depression, anxiety. Even before he was terminated he started having panic attacks; and his doctors provided me with medication.
[6] **Exhibit A** – 93:14-18; 94-95.
[7] *Id.*
[8] **Exhibit A** – 104:14-25; 105-107; 109-120.

4

Mr. Leonard.[9] Plaintiff brought the issues with Mr. Ogburn directly to Mr. Leonard, but it was swept under a rug until after Mr. Ogburn had resigned.[10] Plaintiff believed Mr. Leonard hired Jared Ogburn to find an opportunity to get him out of the office based on his actions trying to file frivolous complaints against Plaintiff.[11] Mr. Sanders was informed by his staff that not only was Jared Ogburn attempting to fabricate information against him; Plaintiff learned Mr. Leonard and Melissa Miranda ("Ms. Miranda") conspired together so that Ms. Miranda would create a list of false information to sabotage Plaintiff.[12] To make matters worse, Ms. Miranda would brag about the "false list" she created and eventually reported the information to Mr. Leonard.[13]

In November 2019, Ms. Miranda was hired by Regions as a Financial Relationship Consultant ("FRC") and reported directly to Plaintiff.[14] During her first year, Plaintiff consistently rated her performance as "partially met expectations;" mainly due to Ms. Miranda's absenteeism and tardiness and lack of production.[15] Plaintiff attempted to coach and engage in positive communication with Ms. Miranda about her lack of sales performance, failure to meet goals, failing to complete assigned tasks, but Ms. Miranda would get defensive and make it confrontational.[16]

**C. In January 2021, Melissa Miranda filed an internal complaint against Plaintiff after Plaintiff rated her previous year performance.**

---

[9] *Id.*
[10] **Exhibit A** – 193-196.
[11] **Exhibit A** – 104:14-25; 105-107; 109-120
[12] **Exhibit A** – 12:4-23; 104:14-25; 105-107; 109-120
[13] *Id.*
[14] **Exhibit F**
[15] **Exhibit A** – 72:3-16; **Exhibit F**
[16] **Exhibit A** – 72:3-16; **Exhibit F**

Unbeknownst to Plaintiff, on January 7, 2021, Ms. Miranda filed an anonymous complaint against Plaintiff.[17] Plaintiff learned the information being alleged against him were a part of the list Ms. Miranda gathered and fabricated to effect his employment.[18]

On February 11, 2021, Plaintiff was given notice of certain concerns that were being made but was not of the understanding that an investigation was ongoing against him. Plaintiff was surprised that Mr. Leonard appeared at his branch in person to discuss the allegations in Ms. Miranda's complaint; while Melody Bodine ("Ms. Bodine") was on the phone.[19] During the interview, Plaintiff gave notice to Regions that his wife owned a mortgage business, and Regions' misconstrued that information to make it appear that Plaintiff was owning the business and referring business to Regions' customers or Eric Johnson when there is no evidence that Plaintiff had any ownership interest in his wife's business or referred any business to his wife.[20]

During the meeting, Plaintiff was also being questioned about his expense reports, which was the first time Plaintiff's expense report ever came into question.[21] Specifically, Mr. Leonard questioned Plaintiff's EDD report expenses, or traveling onsite to these business locations and verifying whether it is a legitimate business.[22] Plaintiff understood the EDD policy as an EDD requirement can come in the form from the EDD department, or it can come in the form of doing some self-diligence where Plaintiff goes out to verify them prior to the companies being put on the EDD list so it does not impact the customer.[23]

---

[17] **Exhibit D**
[18] **Exhibit A** – 12:4-23
[19] **Exhibit A** – 17:22-25;18:1-18; **Exhibit D**
[20] **Exhibit A** – 136:7-25; 137:1-4. Plaintiff was accused of conducting outside business with Eric Johnson, even though Eric Johnson was never interview. Plaintiff always contended he ever done any work with him and never hired him for any work. It was always just more of an inquiry. Regions could have substantiated those claims but failed to act reasonably any interview Eric Johnson.
[21] **Exhibit A** – 140:7-25; 141-144; **Exhibit E**
[22] *Id.*; **Exhibit E**
[23] *Id.*; **Exhibit E; Exhibit H**

After nine years of no issues, Plaintiff was being questioned as to his expenses and whether he "consulted" with Eric Johnson over his wife's business.[24] Plaintiff believed there was a conspiracy between Mr. Leonard, Ms. Miranda, and Mr. Ogburn to formulate reasons to justify violations of Regions' policies. There was no evidence found during the investigation that Plaintiff owned any outside business, but that his wife did, and it was made known that Plaintiff received no income from his wife's business.[25] Moreover, there was no evidence that Plaintiff falsified his expense reports because he provided the locations of the EDD's and was still required to perform the necessary EDD's even during COVID.[26] Plaintiff believed these were acts of discrimination led by Mr. Leonard, and at that point he felt that he had no other choice, but to file an internal complaint directly against Mr. Leonard and Ms. Miranda for discrimination based on race and retaliation because Ms. Miranda asserted the anonymous complaint after she received negative performance reviews submitted by Plaintiff.[27]

### D. In February 2021, Plaintiff filed an internal complaint of race discrimination and retaliation against Dave Leonard and Melissa Miranda.

On February 19, 2021, Plaintiff submitted a statement and an internal complaint to Ms. Bodine specifically alleging that Mr. Leonard was discriminating against Plaintiff because of his race.[28] Plaintiff was asked to set up an interview with Nicole Cooper (HR) and Ms. Bodine, which occurred on February 26, 2021.[29]

Thereafter, material fact disputes were created as to whether Mr. Leonard had notice that Plaintiff has alleged claims of race discrimination against him because Regions closed the internal

---

[24] *Id.*
[25] **Exhibit A** – 172:15-25; **Exhibit D**
[26] **Exhibit H**
[27] **Exhibit D; Exhibit A** – 184:1-25
[28] **Exhibit D**
[29] *Id.*

complaint and the complaint was to be investigated "under legal.[30]" Around the same time Regions abruptly closed the investigation, Mr. Leonard made his decision that Plaintiff should be terminated, inferring that he had notice of Plaintiff's complaint against him.[31] Especially since Bodine and Leonard were having continuous conversations about the ongoing allegations against Plaintiff.[32]

**E.** **Region's reasoning for termination is pretext, given that Dave Leonard's bias towards Plaintiff was influenced by discriminatory motives based on Plaintiff's race. Leonard, Bodine, and Mummert's actions to terminate Plaintiff create credibility issues for a jury to assess.**

Plaintiff never received notice that his internal complaint against Mr. Leonard was being closed "under legal," and for the next three months HR/OAC continued to investigate and retaliate against Plaintiff by misconstruing information and trying to tarnish his credibility by misstating or misconstruing previous information that he had stated.[33] The interviews were harassing and misleading in an attempt to misconstrue the information being discussed and HR/OAC was strategic in not addressing Plaintiff's internal complaints but redirecting the blame towards him with more false allegations.[34]

Another allegation was lodged at Plaitniff that he was being discriminatory and treating his subordinates differently as it pertained to bereavement leave.[35] Plaintiff acknowledge that he made a mistake in the system with a previous employee (Lakeisha Crawford) allowing her to take bereavement for her aunt; and after realizing the mistake, Plaintiff asked HR to assist him by

---

[30] *Id*.
[31] **Exhibit G**
[32] **Exhibit D**; **Exhibit G**. During this time period Bodine and Leonard were working very closely regarding the claims asserted against Plaitniff.
[33] **Exhibit A** – 193-196.
[34] *Id*.
[35] **Exhibit D**

confirming that Ms. Miranda would be allowed the same bereavement leave for her aunt.[36] Ms. Miranda was given bereavement leave, even though she had transferred to a new branch, but Ms. Bodine failed to help Plaintiff provide clarity in the situation. Most likely to continue to misconstrue and place blame on Plaintiff.[37]

After Plaintiff's internal complaint fell through the system, Plaintiff was forced to find and hire legal counsel to assist him in protecting his employment, and on March 7, 2021, Plaintiff's counsel sent Regions' a "cease-and-desist letter" requesting that Regions cease from all discriminatory and retaliatory conduct.[38] Defendant failed to rectify the situation and Plaintiff was compelled to file a charge of discrimination with the EEOC on May 27, 2021.[39]

Plaintiff was terminated on June 3, 2021, immediately, and the ultimate reason that was relayed to him was due to an investigation that was concluded Plaintiff violated Regions' Code of Conduct by not being truthful.[40]

The material evidence presented establishes genuine issues of material facts from which a jury could conclude that: (1) Plaintiff was discriminated against based on his race based on Mr. Leonard's discriminatory animus to target Plaintiff based on his protected class; (2) Defendant failed to investigate Plaintiff's internal complaints about race discrimination and disparate treatment; and (3) the allegation that Plaintiff violated the self-dealing/conflict of interest policy is false or conflicting because records show Regions found those allegations were unsubstantiated and Plaintiff would not have been recommended for termination if he was non-African American.

---

[36] **Exhibit A** – 161-165
[37] **Exhibit F**
[38] **Exhibit D**
[39] **Exhibit B**
[40] **Exhibit G**

## SUMMARY JUDGMENT STANDARD OF REVIEW

Courts have repeatedly emphasized that summary judgment is not favored in employment discrimination cases because discrimination is a matter of intent, intent is an issue of fact, and it depends on the state of mind of the decision maker. *Thornbrough v. Columbus & G.R. Co..* 760 F.2d 633, 639 (5th Cir. 1985); *Waggoner v. City of Garland. Texas.* 987 F.2d 1160, 1164 (5th Cir. 1993); *International Shortstop. Inc. v. Rally's Inc..* 939 F.2d 1257, 1265 (5th Cir. 1991) (summary judgment is inappropriate where issues of intent are involved); *Pullman-Standard v. Swint.* 456 U.S. 273, 287-88 (1982) (intent is a "pure question of fact"); *McDonnell v. Thompson Newspapers. Inc.,* 802 F.Supp. 1484, 1504 (E.D.Tex. 1992) (summary judgment is an inappropriate tool for resolving questions of employment discrimination which involve nebulous questions of motivations and intent).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Glover-Dorsey v. University of Tex. Med. Branch*, 147 F. Supp. 2d 656, 661 (S.D. Tex 2001); *See also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). Issues of material fact are "genuine" if they require resolution by a trier of fact. *Id*. Disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Id*. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id*. Doubts are to be resolved

in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir.1999).

In ruling on Defendant's Motion, cases indicate that the Court must accept Plaintiff's evidence as true and must draw all reasonable inferences in his favor. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). Conversely, the Court must not weigh the evidence or make credibility determinations, for "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves*, 530 U.S. at 150-51 (*quoting Anderson*, 477 U.S. at 255). *See also Dibidale of Louisiana, Inc. v. American Bank & Trust Co*., 916 F.2d 300, 307-08 (5th Cir. 1990) ("credibility assessments are not fit grist for the summary judgment mill").

To win his claim of race discrimination Plaintiff is required to prove that his race, Black, at the time of his termination, was a *motivating factor* in the Defendant's decisions to terminate his employment, *even if other factors* also motivated the Defendant to terminate him. The TCHA is emphatically clear on this point. Chapter 21.125(a) of the TLC states that "an unlawful employment practice is established when the complainant demonstrates that race, age .... was a motivating factor for an employment practice, even if other factors also motivated the practice."

Defendant must prove that the *sole* reason for Plaintiff's termination was exclusively related to the alleged violation of company policies. Additionally, Defendant must also disprove any possible inference that Plaintiff's race was a motivating factor for Plaintiff's termination. *Alayton v. Delta Air Lines. Inc.,* 59 SW3d 283 (Tex.App.--Waco 2001).

Here, the evidence and testimony are highly disputed and dependent upon credibility determinations that cannot be made on summary judgment.

11

## ARGUMENTS AND AUTHORITIES

**A. The TWC's failure to issue the notice of Plaintiff's right to file a civil action does not affect the Plaintiff's right under TCHRA to bring a civil action against the Defendant because it was filed within two years of the EEOC Charge and Plaintiff allowed the EEOC and TWC, 180 days before filing suit, to dismiss the complaint or resolve the complaint.**

Defendant attempts to confuse this Court with the argument that because Plaintiff has filed claims under the TCHRA, he should have or must have received a notice of right to sue from the TWC and file a civil suit within 60 days. Dkt. 35 pg. 19. Defendant cites several cases and states that Plaintiff has failed to present a TWC right to sue letter and doing so is a condition precedent to suit. *Id.* However, these arguments are frivolous and do not take into account the Texas Labor Code and case law regarding these specific issues.

The exhaustion of administrative remedies under Chapter 21 begins with the required filing of a charge of discrimination with the TWC. *See* Tex. Lab.Code Ann. § 21.201; *Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 804 (Tex.2010). A plaintiff must: (1) file a complaint with the TWC within 180 days of the alleged discriminatory practice; (2) permit TWC to dismiss the complaint or resolve it within 180 days before filing suit; and (3) file suit no later than two years after the complaint is filed. Tex. Lab.Code §§ 21.201–202, 208, 256; *Rice v. Russell–Stanley, L.P.,* 131 S.W.3d 510, 513 (Tex.App.-Waco 2004, pet. denied) (holding Employee was not required to present evidence that he received a right-to-sue letter from the Texas Commission on Human Rights (TCHR) in order to maintain his state law-based age discrimination claim against his employer, because right-to-sue letter was not part of the exhaustion of administrative remedies requirement).

Similarly, to the cases cited herein, Plaintiff is not required to present a TWC right to sue letter to bring claims under TCHRA against the Defendant. The Texas Labor Code § 21.252(d)

contains explicit language, stating that the failure of the commission to issue a right to sue letter will not impact the complainant's right to sue. *Id.* § 21.252(d). The statute certainly supports an interpretation that the right-to-sue letter is *notice* of exhaustion, not actually part of exhaustion. Texas Courts have found a plaintiff is entitled to a right-to-sue letter by the mere passage of **180 days** after filing a timely, sworn, written complaint with the Commission. TEX. LAB.CODE ANN. § 21.208 (Vernon 1996). Therefore, for jurisdictional purposes, a plaintiff need not request a right-to-sue letter because it is the mere entitlement to the letter that exhausts the administrative process and ends the Commission's exclusive jurisdiction. *Stinnett v. Williamson County Sheriff's Dep't,* 858 S.W.2d 573, 577 (Tex.App.—Austin 1993, writ denied).

Here, Plaintiff timely filed his EEOC Charge, which was dual filed with the TWC, and let 180 days elapse from the date of his EEOC Charge before filing suit. Moreover, the lawsuit was filed within two years of Plaintiff's EEOC Charge. Defendant even cites *Gorman v. Verizon Wireless*, where the Fifth Circuit held  , "**the failure to receive a Texas right to sue letter is not a jurisdictional defect**." *See Gorman v. Verizon Wireless Tex., LLC*, 753 F.3d 165, 170 (5th Cir. 2014). Therefore, the Court should disregard Defendant's frivolous argument that Plaintiff's TCHRA claims should be dismissed because he had not presented a TWC right-to-sue. Due to the material fact issues presented throughout this response, we respectfully ask this Court to **deny** Defendant's Motion to allow these claims to be assessed and presented to a jury.

**B. Plaintiff can establish a *prima facie* case of race discrimination based on circumstantial evidence under TCHRA.**

Under the TCHRA, an employer commits an unlawful employment practice if, because of an employee's race, the employer,  "discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of

employment...." TEX. LAB. CODE ANN. § 21.051(1). Texas courts look to federal interpretation of analogous federal statutes for guidance because an express purpose of Chapter 21 is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Id.* § 21.001(1); *see also NME Hosps., Inc. v. Rennels,* 994 S.W.2d 142, 144 (Tex.1999).

There are two alternative methods of proof in discriminatory treatment cases. *Mission Consol. Indep. Sch. Dist. v. Garcia,* 372 S.W.3d 629, 634 (Tex.2012); *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476–77 (Tex.2001) (adopting U.S. Supreme Court's alternative analyses for employment discrimination cases). An employee may prove discrimination by presenting the trial court with direct evidence which requires the court to employ a "mixed-motive" analysis. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–46 (1989),

However, where only circumstantial evidence is available, courts utilize the burden-shifting paradigm established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must first establish a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. at 1824. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). In the *McDonnell Douglas* test, the employee's ultimate goal is to show that the employer's stated reason for its adverse action against the employee was a pretext for discrimination by presenting the trial court with indirect or inferential evidence. *See Quantum Chem.,* 47 S.W.3d at 476; *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. at 1824–26.

14

In the absence of direct evidence of discrimination, Plaintiff is required to establish a *prima facie* case of discrimination under the *McDonnell Douglas* burden-shifting analysis. To establish a prima facie case of race discrimination, Plaintiff must show that he (1) is a member of a protected class (here, African American); (2) was qualified for his position (here, based on performance and years in the industry); (3) suffered an adverse employment action (here, termination based motivated in part by Plaintiff's race); and (4) was replaced by someone outside of his protected class or others similarly situated were treated more favorably (here, favorable treatment for non-African Americans). *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); *AutoZone, Inc. v. Reyes,* 272 S.W.3d 588, 592 (Tex.2008). If the plaintiff is successful, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Quantum Chem.,* 47 S.W.3d at 477 (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). The burden then shifts back to the plaintiff to show that the employer's reason was a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 807, 93 S.Ct. at 1826–27. Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier-of-fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106.

Plaintiff asserts that he can establish a *prima facie* case of race discrimination based on circumstantial evidence. Defendant concedes that Plaintiff satisfies most of the elements of the *prima facie* case, which is appropriate because the burden for establishing a *prima facie* case is "very minimal." *Nichols v. Loral Vought Sys. Corp*., 81 F.3d 38, 41 (5th Cir. 1996). However, Defendant asserts that Plaintiff cannot establish the fourth element of his *prima facie* case for race discrimination because Plaintiff was replaced with an African-American associate, and Plaintiff

has no evidence of any similarly-situated comparator evidence. Defendant does not contend that Plaintiff cannot satisfy any other element of her *prima facie* case in its Motion. Based on the evidence presented in this response, Plaintiff has met the burden of establishing a *prima facie* case by circumstantial evidence.

1.    THERE IS A QUESTION OF FACT REGARDING WHETHER PLAINTIFF'S RACE WAS A MOTIVATING FACTOR IN REGION'S TERMINATION OF HIM.

For discrimination claims, the Court has held that adverse employment actions consist of "ultimate employment decisions" such as hiring, firing, demoting, promoting, granting leave, and compensating. *See McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007); *Pegram v. Honeywell, Inc*., 361 F.3d 272, 282 (5th Cir. 2004).

The Texas Commission on Human Rights Act provides that an employer commits an unlawful employment practice if because of race the employer discharges an individual. TEX. LABOR CODE § 21.051. Discrimination claims can be established through either direct or circumstantial evidence. *Laxton v. Gap, Inc.*, 333 F.3d 572 (5th Cir, 2004). Here, if circumstantial evidence exists, the plaintiff must first create a presumption of discrimination by making out a *prima facie* case of discrimination. *Laxton*, 333 F.3d at 579. The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for her termination. *Laxton*, 333 F.3d at 579. The plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status. *Laxton*, 333 F.3d at 579.

It is clear that Mr. Sanders' internal complaints and complaints about his subordinates (Miranda and Ogburn) were not taken into consideration by Mr. Leonard or Regions HR/OAC in the same manner as the claims/allegations being lodged against Plaintiff. In fact Regions

conducted a thorough investigation, interviewing multiple employees to get statements against Plaintiff, but failed remedy the complaints filed by Plaintiff relating to the allegations against him. Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's *prima facie* case, is likely to support an inference of discrimination even without further evidence of defendant's true motive. *Laxton v. Gap, Inc.*, 333 F.3d 572, 580 (5th Cir, 2004); *Sandstad*, 309 F.3d at 897; *Russell*, 235 F.3d at 223.

It is undisputed that Mr. Leonard knew Plaintiff's race prior to making the decision to recommend Plaintiff's termination. And material fact issues have been presented that Mr. Leonard used race as an improper criterion in making his decision that Plaintiff be terminated.

In this analysis, courts may consider the strength of the *prima facie* evidence at the pretext stage. *Goudeau v. National Oilwell Varco, L.P.*, 793 F.3rd 470, 476 (5th Cir. 2015). Plaintiff has provided strong evidence of his *prima facie* case: (1) Plaintiff is African-American; (2) Plaintiff was qualified for his position as evidence by his performance and branch performance; (3) Defendant terminated Plaintiff (motivated in part by his race); and (4) Mr. Leonard treated non-African American more favorably because, under identical circumstances, Regions failed to investigate Plaintiff's internal complaints of race discrimination and disparate treatment in comparison to complaints filed by non-African American employees. A reasonable jury could conclude that race discrimination was at least a "motivating factor" in terminating Plaintiff, and therefore, Plaintiff presented at least a material dispute of fact whether race discrimination was a motivating factor in his termination. Plaintiff has also presented at least a material dispute of fact whether similarly situated non-African Americans were treated more favorably given that Regions failed to investigate Plaintiff's discrimination complaint in the same manner. These material fact issues preclude summary judgment.

2. <u>Genuine issues of material fact exist as to whether Defendant's stated reasons for termination are unworthy of credence, given that Mr. Leonard, Ms. Mummert, and Ms. Bodine developed discriminatory motives to terminate Plaintiff, and Regions failed to investigate Plaintiff's internal complaints in a similar fashion.</u>

As much as Defendant seeks to discredit it, the gravamen of Plaintiff's race discrimination claim is that Defendant's reason for termination is unworthy of credence, false, and conflicting because Regions failed to address Plaintiff's internal complaints in the same manner and procedures as the complaints made against Plaintiff. Moreover, Regions HR/OAC not have any evidence to reasonably believe that Plaintiff violated the self-dealing or conflict of interest policy; yet made the personal judgment, with a discriminatory intent, to terminate him based on his protected class. Defendant alleges it terminated Plaintiff for violating multiple policies, even though the decisionmakers knew Plaintiff did not falsify his expense reports or manipulate his cash boxes. However, Plaintiff asserts that Defendant's reason for termination was pretext to cover up a discriminatory intent to end Plaintiff's employment.

Factual issues exist that provide inconsistencies that Mr. Leonard created his own subjective beliefs without any due diligence as to whether his belief was credible. The decision to recommend and approve Plaintiff's termination was influenced by Ms. Bodine, Mr. Leonard, and Ms. Mummert's discriminatory animus. Their testimony should be considered evidence on which a reasonable juror could rely that a discriminatory motive was developed against Plaintiff after he was targeted based on his protected class – race.

Here, taking all reasonable inferences in Plaintiff's favor, a jury could conclude that Mr. Leonard, Ms. Bodine, and Ms. Mummert had an influence and leverage in making the final decision, which was motivated in part to terminate Plaintiff based on a discriminatory animus towards Plaintiff's race. Therefore, it is clear from the record that all three had some influence or leverage in the decision to terminate Plaintiff.

A widely accepted method of proving pretext, and thus liability, is to show that the employer's statements are false. *See, e.g.*, *Reeves*, *supra*. Another way is to prove that Defendant has provided inconsistent or conflicting explanations for its conduct." *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589 (5th Cir. 2007*); See, e.g., Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002). Yet, another is to prove that other individuals were treated differently. *See, e.g., Ramirez v. Landry's Seafood*, 280 F.3d 576, 577-78 (5th Cir. 2002). Here, the evidence supports all of the above-mentioned methods.

Evidence that the investigation did not uncover violations of the self-dealing policy, or that Plaintiff owned or operated his wife's mortgage business; and that Plaintiff was being hones throughout the investigation; demonstrates that the articulated reasons for Plaintiff's termination lack credence. *Glasmire v. Public Storage*, 2013 WL 1890363 *5 (N.D. Tex. 2013). Such circumstances suggest Plaintiff did not actually violate any policy, especially since Ms. Miranda was known to brag around the office that she was fabricating a list against Plaintiff in collusion with Mr. Leonard. Furthermore, Plaintiff has provided evidence that other similarly situated employees outside his protected class with similar internal complaints, received more information and were more inclusive in their investigation.  The Defendant's claim that the Plaintiff cannot establish pretext should fail. As a result, these inconsistencies and conflicting reasons require a jury's assessment, making summary judgment inappropriate at this stage

### C.  Plaintiff can establish a prima facie case of retaliation under TCHRA.

Plaintiff seeks recovery for his retaliatory termination, in violation Tex. Labor Code § 21.055; which prohibits an employer from retaliating against an employee who has engaged in protected activity. Plaintiff's retaliation claims under the Texas Labor Code mirror the analysis of Title VII.

To maintain an action for retaliation, a plaintiff must make a *prima facie* showing that: (1) he participated in an activity protected (2) his employer took some retaliatory action against him, and (3) a causal link exists between the protected activity and the retaliatory action. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). A plaintiff may prove retaliation either by direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If the plaintiff is able to establish a *prima facie* case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the action. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). Only, if the employer meets this burden of production, must the plaintiff then prove that the employer's proffered reason is a pretext for an actual retaliatory purpose. *McCoy*, 492 F,3d at 557.

> 1.   Plaintiff engaged in protected activity based on his February 2021 internal complaint and his EEOC charge filed in May 2021.

Plaintiff alleges he was terminated in retaliation for engaging in protected activity. Plaintiff engaged in multiple protected actions. Plaintiff engaged in protected activity when he filed an internal complaint of race discrimination based on disparate treatment in February 18, 2021. After Plaintiff's first complaint, Defendant failed to thoroughly investigate, and Plaintiff was forced to engage in another protected activity by filing a charge of discrimination with the EEOC on May 28, 2021. The evidence is sufficient to prove that Plaintiff engaged in protected activity, which satisfies the first element of a retaliation claim.

> 2.   Genuine issues of material fact exist as to whether Plaintiff suffered adverse employment action as a result of his protected activity.

As stated above, Plaintiff suffered materially adverse employment action three months after he engaged in protected activity starting in February 2021 and days after he filed his EEOC

charge in May 2021. Plaintiff's termination should be considered direct evidence of adverse employment action, because it had occurred in a close time after Plaintiff engaged in protected activity to create a relation between his protected complaints and his recommendation for termination. Plaintiff has presented sufficient evidence that establishes she suffered a materially adverse action.

3.  Genuine issues of material fact exist as to the causal connection between Plaintiff's multiple complaints and his subsequent adverse employment action.

Mr. Leonard, Ms. Bodine, and Ms. Mummert were the ultimate decision makers for Plaintiff's termination based on a  recommendation investigation that alleged Plaintiff's was dishonest and violated Regions' policies. Defendant argues that because decisionmakers did not know of Plaintiff's internal complaints; Plaintiff cannot assert a causal connection. Material fact issues exist that it was known by the ultimate decision makers that Plaintiff had engaged in protected activity regarding the disparate treatment and race discrimination against Mr. Leonard. Plaintiff was not afforded a fair opportunity for an investigation into his claims. Plaintiff asserts that because Ms. Bodine was privy to the February 2021 complaints and privy to the claims asserted against Plaitniff, Mr. Leonard was not ignorant of Plaintiff's concerns of disparate treatment based on race. Factual issues exist as there are inconsistencies between the determination and recommendation and what was used to make that recommendation to terminate Plaintiff. Furthermore, the close nexus in time between Plaintiff's protected activity (February 2021/May 2021), and his recommendation termination June 3, 2021, creates an inference that Plaintiff's termination was wholly related to his protected activity.

Based on the adverse action Plaintiff felt after his internal complaint, and no reasonable investigation thereafter, a reasonable jury can infer that a causal connection exists between Plaintiff's protected activity and the subsequent adverse action taken against him. As such,

Plaintiff has met his burden to provide evidence as to his *prima facie* case of retaliation. Thus, summary judgment would be improper on this claim.

> 4. Genuine issues of material fact exist as to whether Plaintiff's termination was pretextual given that Defendant failed to follow its own policy.

Plaintiff has demonstrated a *prima facie* case on his retaliation claims, so the burden shifts to Defendants to produce evidence that its actions were justified by legitimate, nondiscriminatory reasons. *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). As discussed in detail above, Defendant has asserted that it terminated Plaintiff based on allegations of dishonesty and violations of certain internal policies. These reasons, while no evidence exists, do fulfill Defendant's requirements of offering a non-discriminatory reason for its employment decision. Having stated a reason, Plaintiff may show that Defendant's reasons are pretextual attempts to hide their retaliatory animus.

As stated above, Plaintiff asserts that Defendant's reason for termination was pretext to cover up a discriminatory and retaliatory intent to end Plaintiff's employment because there are genuine factual issues exist that provide inconsistencies in the way Defendant follows its policies as it relates to investigating internal complaints and the treatment of Plaintiff. Defendant's failure to follow their own policy creates inconsistencies and doubts as to Defendant's investigation. Sufficient evidence exists to allow a reasonable jury to conclude that Defendant's reasoning for Plaintiff's termination was pretextual and contains doubts as to whether Plaintiff was treated fairly during his investigation. Therefore, Plaintiff respectfully request that the Court deny Defendant's Motion for Summary Judgment in its entirety.

## **CONCLUSION**

The evidence is clear that Defendant fabricated information to make it appear that Plaintiff was dishonest and not credible, even though Defendant could not establish Plaintiff violated the self-dealing or conflict of interest policy (regarding his wife's business, falsifying expense reports, and manipulating cash boxes) because there was no evidence Plaintiff engaged in that conduct. Therefore, we respectfully ask this Court to **DENY** the Summary Judgment Motion as it relates to Plaintiff's race discrimination and retaliation claims under TCHRA because material fact issues exist to proceed to trial for only a jury to assess.

Dated: August 21, 2023                                  Respectfully submitted,



_____

**Alfonso Kennard Jr.**
Texas Bar No.: 24036888
Southern District No.:  713316
Alfonso.Kennard@kennardlaw.com
**Eddie Hodges Jr.**
Texas Bar No. 24116523
S.D. ID. 3479748
5120 Woodway Dr., Suite 10010
Houston, Texas 77056
T: (713) 742-0900
F: (713) 742-0951
eddie.hodges@kennardlaw.com
**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 21, 2023 a true and correct copy of the foregoing instrument

has been served on all counsel of record via ECF online filing system.

**JAMILA M. BRINSON**
State Bar. No. 24074867
S.D. Texas ID. No. 1127492
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, TX | 77010
Voice: (713) 752-4356
Facsimile: (713) 308-4112
Email: jbrinson@jw.com

**JACLYN C. STAPLE**
State Bar No. 24114890
S.D. Texas ID. No. 3241341
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, TX 77010
Voice: (713) 752-4415
Facsimile: (713) 754-6715
Email: jstaple@jw.com

_____
Alfonso Kennard Jr.