IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBENT SANDERS, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 4:22-CV-01523 | |
| § | | |
| REGIONS BANK, § | JURY DEMANDED | |
| Defendant. § | | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Jamila M. Brinson
ATTORNEY-IN-CHARGE
State Bar No. 24074867
S.D. Texas ID. No. 1127492
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, TX | 77010
Voice: (713) 752-4356
Facsimile: (713) 308-4112
Email: jbrinson@jw.com

OF COUNSEL:

Jaclyn C. Staple
State Bar No. 24114890
S.D. Texas ID. No. 3241341
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, TX | 77010
Voice: (713) 752-4415
Facsimile: (713) 754-6715
Email: jstaple@jw.com

ATTORNEYS FOR DEFENDANT
REGIONS BANK

## TABLE OF CONTENTS

**Page**

Table of Authorities ...................................................................**Error! Bookmark not defined.**

I.    Introduction ................................................................................................................1

II.   Sanders has conceded his failure to hire or promote claims. ...............................2

III.  The Price Waterhouse framework does not apply. ............................................3

IV.  The McDonnell-Douglas framework applies, and Sanders has failed to establish a genuine issue of material fact on each element of his race discrimination claim. ...........................5

      A.   Sanders lacks proof of a prima facie race discrimination case. ...............................6
      B.   Sanders presents no evidence of pretext. .................................................6

V.   Sanders has failed to establish a genuine issue of material fact on each element of his retaliation claim. ........................................................................9

VI.  Regions' investigation into Sanders' report does not establish race discrimination or retaliation. ...................................................................11

VII. Conclusion ................................................................................................14

Certificate of Service .........................................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alayton v. Delta Air Lines, Inc.*,
    59 S.W.3d 283 (Tex. Ct. App. 2001) .......................................................................................3

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986) .................................................................................................................3

*Atkins v. Southeast Comm'y Health Sys.*,
    712 F. App'x 388 (5th Cir. 2017) ............................................................................................8

*Caudle v. City of Angelo*,
    260 F.3d 621 (5th Cir. 2001) (per curiam) ..............................................................................1

*Clark v. Johnson*,
    206 F. Supp.3d 645 (D.D.C. 2016) .......................................................................................11

*Davis v. Farmers Ins. Exch.*,
    No. 4:08-CV-625-A, 2009 WL 1065159 (N.D. Tex. Apr. 17, 2009), *aff'd* 372
    F. App'x 517 (5th Cir. 2010) ................................................................................................13

*DeCecco v. UPMC*,
    3 F. Supp.3d 337 (W.D. Penn. 2014) ....................................................................................11

*Donaldson v. Tex. Dep't of Aging and Disability Servs.*,
    495 S.W.3d 421 (Tex. App. 2016) ..........................................................................................3

*Exxon Mobil Corp. v. Rincones*,
    520 S.W.3d 572 (Tex. 2017) ...................................................................................................3

*Gorman v. Verizon Wireless Tex., LLC*,
    753 F.3d 165 (5th Cir. 2014) ................................................................................................10

*Helen of Troy, LP v. Zotos Corp.*,
    235 F.R.D. 634 (W.D. Tex. 2006) ..........................................................................................1

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) ..................................................................................................6

*Long v. Eastfield College*,
    88 F.3d 300 (5th Cir. 1996) ....................................................................................................4

*Magee v. Life Ins. Co. of N. Am.*,
    261 F. Supp.2d 738 (S.D. Tex. 2003) .....................................................................................2

*McCoy v. City of Shreveport*,
   492 F.3d 551 (5th Cir. 2007) ...................................................................................................6

*McDonnell-Douglas Corp v. Green*,
   411 U.S. 792 (1973)..............................................................................................................3, 5

*Nichols v. Loral Vought Sys. Corp.*,
   81 F.3d 38 (5th Cir. 1996) .......................................................................................................3

*PriceWaterhouse v. Hopkins*,
   490 U.S. 228 (1989), Doc. 39, p. 19-20..................................................................................3, 5

*Quantum Chem. Corp. v. Toennies*,
   47 S.W.3d 473 (Tex. 2001)......................................................................................................3

*Reed v. Neopost USA, Inc.*,
   701 F.3d 434 (5th Cir. 2012) ...................................................................................................3

*Swenson v. Schwan's Consumer Brands N.A., Inc.*,
   500 F. App'x 343 (5th Cir. 2012) ............................................................................................9

*Waggoner v. City of Garland*,
   987 F.2d 1160 (5th Cir. 1993) .................................................................................................4

*Wallace v. Methodist Hosp. Sys.*,
   271 F.3d 212 (5th Cir. 2001) .................................................................................................11

**Statutes**

Texas Labor Code § 21.125 ............................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 56............................................................................................................................1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT SANDERS, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-01523 |
| | § | |
| REGIONS BANK, | § | JURY DEMANDED |
|    Defendant. | § | |

## **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Regions Bank ("Regions") submits the following Reply in support of its Opposed Motion for Summary Judgment, Doc. 35, and in response to Plaintiff Robert Sanders' ("Sanders" or "Plaintiff") Response in Opposition, Doc. 39 ("Response").[1]

## **I.   INTRODUCTION**

Sanders' arguments against summary judgment stem from conjecture, speculation, and his own theories that are not supported by record evidence. According to Sanders, his termination of employment resulted from Regions associates joining in multiple conspiracies against him, specifically between: (1) his supervisor, Dave Leonard ("Leonard"), and his direct report, Melissa Miranda ("Miranda"), who apparently kept a list of issues she had with Sanders that she provided

---

[1] Regions objects to Plaintiff's use of certain documents in his Response because they are not authenticated, and such documents should be stricken from the record. *Caudle v. City of Angelo*, 260 F.3d 621 (5th Cir. 2001) (per curiam); *Helen of Troy, LP v. Zotos Corp.*, 235 F.R.D. 634, 639 (W.D. Tex. 2006) (citing *Haynes v. Pennzoil Co.*, 141 F.3d 1163, 1998 WL 197784, at *2 (5th Cir. 1998) (per curiam)) ("To be admissible as summary judgment evidence, documents must be authenticated by and attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(a)") (cleaned up)). For example, Plaintiff did not attach Exhibits B-H to his Response to any affidavit or declaration authenticating the documents. Although some of the documents within Plaintiff's Exhibits B-H were attached to Regions' Declarations in support of its Motion, a number of them have not been authenticated by any witness, such as: (1) Response Exhibit D, Doc. 39-1, p. 179-182 (which contains what appears to be a self-serving statement by Plaintiff that he cites to as fact); (2) Response Exhibit E, Doc. 39-1, pp. 197-213; (3) Response Exhibit F, Doc. 39-1, pp. 215-244; and (4) Response Exhibit H, Doc. 39-1, p. 250-267. Further, Plaintiff's generalized footnote references to "Exhibit D" or "Exhibit G" do not point to portions of record evidence supporting his assertions.

to Leonard; (2) Leonard and Jared Ogburn ("Ogburn"), another one of Sanders' direct reports who, per Sanders, was a "nepotism" hire and wanted Sanders fired; and (3) Leonard and Regions' Office of Associate Conduct ("OAC") investigators Melody Bodine ("Bodine") and Erin Mummert ("Mummert"), who allegedly wanted Sanders fired because of his race or in retaliation. But Sanders fails to point to record evidence supporting these statements and show how they resulted in race discrimination or retaliation. Ultimately, it was Sanders' own untruthful conduct during the internal investigation into complaints made by another Regions associate that led to Sanders' termination of employment—not race discrimination or retaliation.

## II.  SANDERS HAS CONCEDED HIS FAILURE TO HIRE OR PROMOTE CLAIMS.

Much of Plaintiff's Petition focused on two lateral Branch Manager positions for which he claims he expressed interest.[2] Plaintiff also testified about a Consumer Banking Manager role in which he was interested (but did not apply). In his Response, Plaintiff made only a passing reference to these positions and provided no legal argument about why he has viable failure to hire or promote claims.[3] Regions' Motion pointed out that these claims are time-barred and, even if they were not, Plaintiff either did not apply for them or cannot show he was "clearly more qualified" than the selected candidate.[4] Due to his failure to substantively respond to Regions' arguments, Plaintiff has conceded and waived his claims. *See Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp.2d 738, 748 n. 10 (S.D. Tex. 2003) (citing *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002)) (explaining failure to brief an argument in district court waives that argument in district court). This Court should accordingly dismiss Plaintiff's race discrimination claim based on a failure to hire or promote theory.

---

[2] Dkt. No. 1-3, pp. 3-5.
[3] See Dkt. 39, p. 10.
[4] Dkt. 35, pp. 20-21.

**III.     THE *PRICE WATERHOUSE* FRAMEWORK DOES NOT APPLY.**

In his Response, Sanders advocates for a mixed motive analysis under *PriceWaterhouse v. Hopkins*, 490 U.S. 228 (1989).[5] However, a mixed motive analysis applies when direct evidence of discrimination is present, such as race-based comments by the decision-maker. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012). Sanders cites to Texas Labor Code § 21.125 for the proposition that a mixed motive analysis always applies to TCHRA claims.[6] But TCHRA claims follow the analysis in *McDonnell-Douglas Corp v. Green*, 411 U.S. 792 (1973) when circumstantial evidence is at issue. *See Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 583 (Tex. 2017); *Donaldson v. Tex. Dep't of Aging and Disability Servs.*, 495 S.W.3d 421, 433 (Tex. App. 2016) (citing *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 482 (Tex. 2001)) (explaining *Quantum* adopted U.S. Supreme Court's alternative analyses for discrimination cases).

Sanders may be arguing an alleged discriminatory recommendation for termination by Bodine or Mummert influenced Leonard, the decision-maker, and constituted direct evidence. A "reasonable jury" could not reach that conclusion for several reasons. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). First, despite Sanders' statements to the contrary, there is no genuine issue of material fact on who the decision-maker was in his termination: his direct supervisor, Leonard. What matters in an employment discrimination case is the motive of the decision-maker who took the adverse employment action. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41–42 (5th Cir. 1996) ("To be probative, alleged discriminatory statements must be made by the relevant decision maker" (citation omitted)); *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 442 (5th Cir. 2012) (affirming summary judgment when remarks were made by individuals not responsible for the

---

[5] Doc. 39, p. 19-20.
[6] Dkt. 39, p. 17. Sanders also cites to a Texas appellate court case, *Alayton v. Delta Air Lines, Inc.*, 59 S.W.3d 283 (Tex. Ct. App. 2001), which is a workers' compensation retaliation case that involves a different Texas Labor Code chapter and a different legal framework.

- 3 -

termination decision). Sanders fails to present direct evidence of discrimination, such as race-based comments, by Leonard.

Second, Sanders also alleges OAC investigators Bodine and Mummert were decision-makers.[7] This is incorrect—in Regions' business structure, OAC investigators make only recommendations for discipline, and Regions' business unit supervisors make discipline decisions.[8] As reflected in testimony and emails in the summary judgment record,[9] investigators like Bodine and Mummert, who may recommend (or not recommend) disciplinary action to a Regions supervisor who is free to accept or reject the recommendation, are not the decision-makers, and the purported motives of the investigators are not dispositive. *Long v. Eastfield College*, 88 F.3d 300, 307 (5th Cir. 1996) (noting supervisors are those who have power to make discipline, hiring, and firing decisions). Regardless, Sanders has failed to present any direct evidence of race discrimination by Bodine or Mummert. Further, Regions employees above Bodine and Mummert in Regions' OAC hierarchy, including Jon Mark Sills, HR Business Partner, approved the termination recommendation.[10]

Third, Plaintiff argues Leonard, Bodine, and Miranda conspired against him, thus creating a credibility issue for a jury.[11] Plaintiff presents no evidence (direct or indirect) supporting a conspiracy to discriminate, and his assertion is purely speculative. *See Waggoner v. City of Garland*, 987 F.2d 1160, 1164 (5th Cir. 1993) (holding plaintiff's affidavit claiming a conspiracy occurred between his supervisor, director, and the coworker who complained about him based on

---

[7] Doc. 39, p. 8 ("inferences can be drawn that Leonard, Bodine, and Mummert all made the ultimate decision to terminate Plaintiff (not just Leonard)).
[8] Doc. 35-3, Mummert Decl. ¶¶ 12-13.
[9] Dkt. 35-3, Mummert Decl. ¶ 13; Dkt. 35-3, p. 253.
[10] Doc. 35-3, p. 253.
[11] Doc. 39, pp. 14-15.

his protected characteristic was a "subjective belief" and "simply insufficient to establish a [ ] claim").[12] For all of these reasons, this Court should hold there is no direct evidence of discrimination and decline to apply the *PriceWaterhouse* "mixed motive" analysis in favor of the *McDonnell-Hopkins* analysis.

But even if the *PriceWaterhouse* analysis is applied, Regions would have made the same termination decision regardless of Plaintiff's race. This is supported by the indisputable fact that Regions terminated Sanders, an African American associate, then filled his position with an African American associate.[13] Additionally, even assuming *arguendo* Leonard, the decision-maker, had discriminatory animus, a termination recommendation was supported by multiple members of the OAC, most of whom Plaintiff does not contend conspired or discriminated against him or had any discriminatory animus.[14] To the extent *PriceWaterhouse* applies, this Court should accordingly grant Regions' Motion on Sanders' race discrimination claim.

## IV. THE *MCDONNELL-DOUGLAS* FRAMEWORK APPLIES, AND SANDERS HAS FAILED TO ESTABLISH A GENUINE ISSUE OF MATERIAL FACT ON EACH ELEMENT OF HIS RACE DISCRIMINATION CLAIM.

As there is no direct evidence, the burden-shifting framework for indirect evidence set forth in *McDonnell-Douglas* applies. Sanders acknowledges as much.[15]

---

[12] Similarly, Sanders' assertion about a conspiracy between Miranda and Ogburn, *see* Dkt. at 39, p. 7, is equally as speculative. Sanders' Response fails to support this theory with proof or explain why, even if it was true, it would be material to his claims. Sanders' references to Ogburn are red herrings, *see* Dkt. 39, p. 10, as there is no evidence of (1) a conspiracy involving Ogburn, or (2) how Ogburn's employment at Regions connected to Sanders' race when, by Sanders' own admission, Ogburn's hire was "nepotism" and Sanders had the authority to discipline Ogburn. Dkt. 35-1, p. 54, Sanders Dep. p. 117:14-18.
[13] Doc. 35-3, p. 10, Mummert Decl. ¶ 19; Dkt. 35-3, p. 303.
[14] Doc. 35-3, pp. 253-55 (recommendation approvals from Bodine and Mummert; Jon Mark Sills, Human Resources Business Partner; Melanie Dunagan, Associate Relations Manager; Stacey Rowland, Associate Relations Manager; Michelle Spencer, Executive Vice President, Head of Associate Relations and Customer Complaints).
[15] Dkt. 39, p. 20 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802-05).

### A.   Sanders lacks proof of a prima facie race discrimination case.

In his Response, Sanders argues he has established a prima facie race discrimination case because Regions has not challenged three of the four elements.[16] It is Sanders, not Regions, who has the burden to establish all four elements of his prima facie race discrimination case. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Sanders admits he has not established a genuine issue of material fact on the fourth element. Sanders has presented no evidence that he was either: (1) replaced with a non-African American associate, or (2) was treated less favorably than similarly-situated non-African American associates. Nor can he: an African American associate replaced Sanders,[17] and Sanders presents no evidence of a similarly-situated Branch Manager supervised by Leonard who engaged in untruthful communications in a Regions investigation in violation of Regions' Code (among other policy violations) but who was retained.

Sanders cannot establish all four elements of his prima facie race discrimination case. Contrary to Plaintiff's assertions that summary judgment is "inappropriate" for employment discrimination cases,[18] that is simply not the case where Plaintiff cannot meet basic evidentiary burdens. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). Summary judgment is therefore appropriate on Sanders' race discrimination claim. *See id.* ("summary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant" (internal quotation omitted)).

### B.   Sanders presents no evidence of pretext.

Sanders unsuccessfully points to purported evidence of pretext in Regions' reason for his termination. First, Sanders' Response states, "material fact issues have been presented that

---

[16] Doc. 39, pp. 21-22.
[17] Dkt. 35-1, p. 95, Sanders Dep. p. 235:7-17.
[18] Doc. 39, p. 16.

Mr. Leonard used race as an improper criterion in making his decision that Plaintiff be terminated."[19] No evidence shows Leonard's termination decision had to do with Sanders' race; rather, Regions' investigation documentation demonstrates Sanders provided varying, shifting explanations throughout the investigation, thus violating Regions' Code, and that primarily his Code violation and untrustworthiness resulted in his termination.[20]

Second, Sanders' Response made an unsubstantiated leap of logic that Leonard treated non-African American associates more favorably because Regions allegedly failed to investigate his own internal report.[21] Leonard had nothing to do with intake, processing, or determining how to investigate the complaints about Sanders or Sanders' report—they were all reported to Regions' Human Resources and directed to the OAC, who led the investigations.[22] Leonard was in a business role, not a Human Resources role. Although the OAC asked for Leonard's assistance in gathering some information, Leonard did not decide how the investigations would progress.[23]

Third, Sanders challenges the "decisionmakers'" honest belief in Sanders' policy violations. Sanders argues, "decisionmakers" knew Plaintiff did not falsify his expense reports or manipulate his cash boxes."[24] Sanders' termination was based primarily on his dishonesty and

---

[19] Dkt. 39, p. 23.
[20] Doc. 35-3, p. 224-26 (at p. 226: "Leonard recommends Sanders be terminated for code of conduct, and procedural violations. Human Resources (Human Resources Business Partner Jon Mark Sills, Associate Relations Business Partners Erin Mummert and Melody Bodine) support management's recommendation to term.") (at p. 227: "The code of conduct violation in not being truthful coupled with the other violations led to the termination recommendation").
[21] Dkt. 39, p. 23.
[22] Sanders' Response states his termination resulted from violating Regions' self-dealing and conflict of interest policy, see Dkt. 39, p. 15, but that was one of eight allegations Regions investigated, and it was found to be unsubstantiated. *See* Doc. 39-1, p. 247. His termination resulted from substantiated violations of the Code of Conduct, misapplication of the You and Regions Guidelines, Regions' Transaction Processing Manual, and Conflicts of Interest – Outside Activity policy. Dkt. 35-3, pp. 226-27.
[23] Dkt. 35-3, p. 277 (email from Leonard asking Bodine in the OAC if there was "anything [he] could do to help/support" on Miranda's complaint about Sanders).
[24] Dkt. 39, p. 24.

shifting explanations during the investigation, in violation of Regions' Code.[25] Nonetheless, Leonard in his supervisory role rightfully questioned Sanders' expense report, particularly once Sanders provided differing business names for the report entries;[26] and was duty-bound by Regions' Code to question Sanders' cash box "pawn shop" practices because Sanders presented shifting explanations and his direct reports had "miscellaneous" entries in their cash boxes.[27]

Fourth, Sanders questions the conclusions of Regions' investigation. For example:

- Sanders argues Regions misconstrued information to make it appear he owned and referred customers to his wife's mortgage business. He also argues Regions misconstrued that he was referring business to Eric Johnson, a Regions associate with a side construction business.[28] Regions' investigation did not substantiate misconduct related to Sanders' wife's mortgage business; rather, the investigation found Sanders failed to disclose that he owned and operated rental property (for which he used Eric Johnson's services).[29]

- Plaintiff claims he understood Enhanced Due Diligence ("EDD") to include his own self-diligence.[30] Even if that was the case, he still indisputably provided different business names for which he claimed he conducted EDD,[31] and his expense report was questioned because of COVID protocol dated August 25, 2020, required minimizing EDD visits.[32]

- Plaintiff argues he was suddenly being questioned after working for Regions for nine years with no issues.[33] This is false, as Plaintiff admittedly had two prior disciplinary actions with Regions.[34]

- Plaintiff states he was being honest throughout the investigation.[35] But an employee's denials are not evidence of pretext. *See Atkins v. Southeast Comm'y Health Sys.*, 712 F. App'x 388, 392 (5th Cir. 2017) (holding employee's statement she was not guilty of

---

[25] Dkt. 39-1, p. 247; Dkt. 35-3, p. 8, Mummert Decl. ¶ 13; Dkt. 35-3, p. 253, Exh. C-12, ("Management's recommendation is to term.").

[26] Dkt. 35-3, pp. 67-72 (emails from Leonard related to asking whether EDD surveys on expense report were necessary (given COVID protocols)); Dkt. 35-3, pp. 84-87 (Leonard questioning Sanders' site surveys on his expense report); Dkt. 35-3, pp. 88-95 (Leonard following up on EDD request for a business that post-dated when Sanders claimed EDD expenses on his expense report); Dkt. 35-3, p. 96-101 (Leonard emailing to confirm whether operations department had requested EDD for businesses Sanders listed).

[27] Dkt. 35-3, pp. 154, 159, and 166 (cash box balance sheets with money in miscellaneous); 229-232.

[28] Dkt. 39, p. 12.

[29] Dkt. 35-3, p. 228.

[30] Dkt. 39, p. 12.

[31] Compare Dkt. 35-3, p. 111, from January 29, 2021 with Dkt. 35-3, p. 123, from April 5, 2021.

[32] Dkt. 39-1, p. 255.

[33] Dkt. 39, p. 13.

[34] Dkt. 35-1, p. 23, Sanders Dep. p. 56:8-23.

[35] Dkt. 39, p. 25.

accessing free prescriptions for friends and family not evidence of pretext, or evidence of an unlawful termination).

What matters is whether Regions honestly believed its conclusions—not whether the conclusions were ultimately right or wrong—and Plaintiff presents no evidence that Regions did not honestly believe that Plaintiff violated its policies and Code. *See Swenson v. Schwan's Consumer Brands N.A., Inc.*, 500 F. App'x 343, 346 (5th Cir. 2012) (citing *Waggoner*, 987 F.2d at 1166). Plaintiff therefore has failed to present a genuine issue of material fact on pretext.

## V.  SANDERS HAS FAILED TO ESTABLISH A GENUINE ISSUE OF MATERIAL FACT ON EACH ELEMENT OF HIS RETALIATION CLAIM.

Plaintiff has not pointed to evidence establishing a causal connection between his June 3, 2021 termination, on the one hand, and his February 17, 2021 internal report to Regions or his May 28, 2021 EEOC Charge on the other. First, there is no evidence that the decision-maker, Leonard, knew of any protected conduct before making the termination decision. There is no documentary evidence Leonard knew. There is no testimony suggesting Leonard knew.[36] Sanders argues that because Regions' OAC "closed" the investigation to his report on or about April 14, 2021, that was proximate in time to March 25, 2021 when Leonard made his termination decision and so Leonard must have known about Sanders' report.[37] Plaintiff has failed to point to evidence that could support this conjecture. There is no evidence Leonard was privy to the OAC "closing" Sanders' report when Regions' Legal Department took over investigating the report.

Instead, Sanders simply argues Leonard must have known about his report. Sanders imputes knowledge to Leonard because his attorney emailed a "cease and desist" letter to three

---

[36] Sanders argues Leonard, Bodine, and Mummert's "testimony" shows they held "discriminatory animus." See Dkt. 39, p. 24. There was no record testimony from Leonard or Bodine because Plaintiff failed to depose any of Regions' witnesses, and Plaintiff has failed to explain how Mummert's Declaration attached to Regions' Motion shows "discriminatory animus."
[37] Dkt. 39, p. 14.

OAC investigators, including Bodine—but the letter was neither addressed or emailed to Leonard, nor is there any evidence it was shared with him.[38] Sanders then claims Mummert's declaration testimony that she had no reason to believe Leonard knew about Sanders' report was speculative, but he fails to explain how.[39] Mummert exchanged numerous emails with Leonard wherein Leonard never mentioned Sanders' report, and Mummert discussed the investigation results with Leonard.[40] Further, Regions did not receive Sanders' EEOC Charge until after Sanders was terminated.[41] For these reasons, Regions' decision-maker lacked knowledge of Sanders' internal report and EEOC Charge, and Sanders' retaliation claim therefore fails. *Gorman v. Verizon Wireless Tex., LLC*, 753 F.3d 165, 171 (5th Cir. 2014) (explaining knowledge of protected activity required to establish causal connection).

Sanders' June 3, 2021 termination was temporally removed from his February 11, 2021 report, a fact that Sanders' Response does not directly address. Leonard decided to terminate Sanders' employment on or about March 25, 2021, and the OAC concurred on or about April 8, 2021. But Regions investigated Sanders' report and thus did not implement termination until June 3, 2021. Had Regions retaliated against Sanders because of his complaint, it would not have investigated Sanders' report, and his termination would have happened sooner than three and a half months later. *See Gorman v. Verizon Wireless Tex., LLC*, 753 F.3d 165, 171 (5th Cir. 2014). Plaintiff lacks evidence of a causal connection.

---

[38] Dkt. 35,-3, p. 304-307; Dkt. 39, p. 27.
[39] Dkt. 39, p. 8.
[40] Dkt. 35-3, p. 8, Mummert Decl. ¶ 13; see also Dkt. 35-3, pp. 67-94, 126-140, containing emails between Leonard and Mummert; Dkt. 35-3, p. 177, reflecting March 25, 2021 conversation between Bodine, Leonard, and Mummert regarding the investigation.
[41] Dkt. 35-4, p. 49 (showing EEOC did not upload Sanders' Charge to the Respondent's Portal for notifying Regions until June 6, 2021, which was after his June 3, 2021 termination, and Regions did not log onto the Portal or download the Charge until June 7, 2021).

Finally, as explained above, Sanders has not presented a genuine issue of material fact on pretext. Summary judgment is therefore appropriate on his retaliation claim.

## VI. REGIONS' INVESTIGATION INTO SANDERS' REPORT DOES NOT ESTABLISH RACE DISCRIMINATION OR RETALIATION.

Sanders argues that Regions handled his report differently than it handled the complaints it received about him, thus establishing race discrimination and retaliation.[42] Regions handled Sanders' report differently because of Sanders' own conduct, and Plaintiff presents no legal authority that doing so constituted race discrimination or retaliation. The way Regions conducted its investigations does not rise to an adverse employment action required to support a discrimination or retaliation claim. *See, e.g.*, *Clark v. Johnson*, 206 F. Supp.3d 645, 659-60 (D.D.C. 2016) (holding employee failed to state a claim because investigations into her misconduct allegedly conducted differently from investigations into other similarly-situated employees did not rise to adverse employment action); *DeCecco v. UPMC*, 3 F. Supp.3d 337, 381 (W.D. Penn. 2014) (citing *Geddis v. Univ. of Del.*, 40 F. App'x 650, 653 (3d Cir. 2002)) ("the lack of investigation alone did not establish that the defendant fired the plaintiff based on discriminatory reasons" (cleaned up)). Further, employers like Regions are entitled to treat employees differently who are differently situated in material respects, which was the case here once Sanders threatened legal action against Regions (and the complainants against Sanders did not). *See generally Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).

Record documentation makes clear what happened with respect to Sanders' report, as detailed in Regions' Motion.[43] Sanders saw his conduct was in question after his February 11,

---

[42] Dkt. 39, pp. 7-8 ("Regions failed to handle the complaint asserted against Dave Leonard (Caucasian) and Melissa Miranda (Hispanic) in the same manner or equally, as the complaints against Plaintiff which demonstrates disparate treatment.").

[43] Dkt. 35, pp. 15-16.

2021 OAC interview and issued his own report on February 18, 2021, saying he would follow up his concerns in writing.[44] Regions' OAC promptly sought to interview Sanders on February 20, 2021, but he again indicated he planned to submit his concerns in writing. On February 26, 2021, Regions' OAC investigators Bodine and Nicole Cooper interviewed Sanders, and he again said he would follow up his concerns in writing.[45] Sanders finally sent a writing on March 9, 2021, which was a "cease and desist" letter from legal counsel.[46] Although Sanders now argues his "internal complaint fell through the system" and he was "forced to find and hire legal counsel to assist him in protecting his employment,"[47] the facts do not support that timeline. The OAC reached out numerous times to speak with Sanders, and Sanders continued to remark he planned to submit his concerns in writing.[48] Upon receiving the "cease and desist" letter related to threatened legal action, Regions directed Sanders' report from its OAC to its Legal Department because Regions' OAC investigates associate misconduct, not threatened legal action.[49]

Importantly, Regions' policies permit it to handle complaints and legal matters as it deems appropriate. Associates are aware of this through Regions' Code, which states under its Office of Associate Conduct policy:

> The Office of Associate Conduct ("OAC") is responsible for investigating and providing effective solutions to all matters related to associate conduct. Investigations involving allegations of associate misconduct will be promptly and effectively investigated by the OAC *along with other business groups, as appropriate*.

---

[44] Dkt. 35-1, p. 44, Sanders Dep. p. 100:15-18, 172:1-11; Dkt. 35-3, p. 7, Mummert Decl. ¶ 11, Exh. C-7; Mummert Decl. ¶ 11, Exh. C-11.
[45] Dkt. 35-3, p. 7, Mummert Decl. ¶ 11, Exh. C-7.
[46] Dkt. 35-3, p. 10, Mummert Decl. ¶ 20, Exh. C-18.
[47] Dkt. 39, p. 15.
[48] Dkt. 35-3, p. 7, Mummert Decl. ¶ 11, Exh. C-7.
[49] Dkt. 35-3, p. 16, Office of Associate Conduct policy in Regions' Code, which states the OAC investigates "matters related to associate conduct."

Regions' policies did not guarantee all investigations would be conducted by the OAC or in the exact same way (particularly once legal action is threatened). Nor would it be appropriate to do so: investigations should be tailored to the circumstances. Sanders cites no legal authority that employer must investigate all reports the same.

Sanders' assertion that Regions forewent investigating or prematurely "closed" his internal report is false.[50] There is no dispute that Regions' OAC interviewed Plaintiff in connection with his report.[51] After receiving the "cease and desist" letter, the OAC closed its investigation because the investigation "w[ould] be investigated under legal."[52] Regions' Legal Department was in fact investigating Sanders' report: Regions extended its own internal due dates for a decision on Sanders' employment status, including to give the Legal Department sufficient time to do so.[53]

Further, it is unclear exactly what Plaintiff contends was done differently in Regions' investigation into his report versus the complaints about him. Different Regions departments completed the investigations, but Plaintiff has not linked that fact to race discrimination or retaliation. Plaintiff claims Regions' multiple interviews of him were "harassing,"[54] but he cannot have it both ways—he cannot issue a report and expect not to be interviewed, or expect Regions to only interview him once if it learned new information in the investigation process. Sanders claims Regions interviewed multiple employees "to get statements against Plaintiff, but failed [to] remedy the complaints filed by Plaintiff related to the allegations against him,"[55] but Sanders did not seek discovery into the parameters of Regions' investigation to support that assertion. *See*

---

[50] Dkt. 39, p. 8.
[51] Dkt. 39-1, p. 3, Sanders Dep. pp. 8:14-24; Dkt. 39, p. 13.
[52] Dkt. 35,-3, p. 236.
[53] Dkt. 35-3, pp. 238-244; Dkt. 35-3, p. 238 ("Please extend [the due date] again, through 6/4/21 as Erin has not yet received final guidance from HR Legal. Erin has been following up, but HR Legal is not prepared to respond just yet").
[54] Dkt. 39, p. 14.
[55] Dkt. 39, pp. 22-23.

*Davis v. Farmers Ins. Exch.*, No. 4:08-CV-625-A, 2009 WL 1065159, at *7 (N.D. Tex. Apr. 17, 2009), *aff'd* 372 F. App'x 517 (5th Cir. 2010) (holding "[n]either plaintiff's opinion of defendant's investigation, nor her opinion of whether or not her conduct violated defendant's [p]olicies, is sufficient to create a genuine issue of material fact as to pretext").

The differences in how Regions handled Sanders' report and the complaints against Sanders do not negate Regions' legitimate, non-discriminatory, non-retaliatory, and non-pretextual reasons for Sanders' termination. Investigation documentation shows numerous inconsistencies and shifting explanations by Sanders, so much so that Bodine and Mummert had a four page outline just to keep track of them.[56] These inconsistencies were the primary reason Regions terminated Sanders' employment. Regions is part of a highly regulated industry and needs honest associates who can be trusted with customers' money. Even if the many conspiracies amongst Regions associates that Sanders hypothesizes were true (which they were not), they do not change Sanders' own dishonest conduct during Regions' investigation that resulted in his termination. For these reasons, a reasonable jury could not believe Sanders was terminated due to race discrimination or retaliation, and Sanders lacks a genuine issue of material fact on his claims.

## VII. CONCLUSION

For the above reasons and those in Regions' Motion, this Court should grant summary judgment to Regions on all of Sanders' claims and dismiss this case with prejudice.

---

[56] Dkt. 35-3, pp. 229-232.

                Respectfully submitted,

By:   **/S/ JAMILA M. BRINSON**
Jamila M. Brinson
ATTORNEY-IN-CHARGE
State Bar. No. 24074867
S.D. Texas ID. No. 1127492
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, Texas | 77010
Telephone: (713) 752-4356
Facsimile: (713) 308-4112
Email: jbrinson@jw.com

OF COUNSEL:

Jaclyn C. Staple
State Bar No. 24114890
S.D. Texas ID. No. 3241341
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, TX | 77010
Voice: (713) 752-4415
Facsimile: (713) 754-6715
Email: jstaple@jw.com

                ATTORNEYS FOR DEFENDANT
                REGIONS BANK

## CERTIFICATE OF SERVICE

    This is to certify that on August 28, 2023, a true and correct copy of the foregoing document was served via this Court's electronic ECF filing system upon:

Mr. Eddie Robert Hodges, Jr.
Kennard Law P.C.
5120 Woodway Drive, Suite 10010
Houston, Texas 77056

                                        **/S/ JAMILA M. BRINSON**

                                        Jamila M. Brinson

37218988v.5