Case 4:22-cv-01523   Document 58   Filed on 12/16/24 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
December 16, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT SANDERS, | § | |
| *Plaintiff,* | § § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-1523 |
| REGIONS BANK, | § § § | |
| *Defendant.* | § | |

### ORDER

Pending before the Court is Defendant Regions Bank's ("Regions") Motion for Summary Judgment. (Doc. No. 53). Plaintiff Robert Sanders ("Sanders") filed a Response (Doc. No. 55) and Defendant replied. (Doc. No. 56). For the reasons outlined below, the Court hereby **GRANTS** Regions's Motion for Summary Judgment. (Doc. No. 53).

### I.   Background

This is an employment dispute involving a claim of hostile work environment. Sanders was employed by Regions as a Branch Manager in Sugar Land, Texas beginning in 2012 until his termination in 2021. Sanders alleges that his former supervisor Dave Leonard ("Leonard"), a Consumer Banking Manager, was "disparaging and discriminatory" towards him during his employment at Regions. (Doc. No. 1-3 at 3). Sanders claims that he expressed interest in open Branch Manager positions at other Regions branches between 2018-2019 and was repeatedly denied the opportunity to transfer. In 2019, Sanders applied and participated in a short interview with Leonard for a Branch Manager position in Lake Riverstone, Texas, for which Regions selected another candidate. Sanders alleges that Leonard's interview questions were "irrelevant"

to Sanders' experience, and that he felt discriminated against during the interview after Leonard failed to ask Sanders about his proposed plan for the new branch. (Doc. No. 39-1 at 28).[1]

In early January 2021, when Sanders was employed by Regions as a Branch Manager in Sugar Land, an employee in Sanders's branch, Melissa Miranda ("Miranda"), filed an internal complaint against Sanders. Sanders alleges that this internal complaint was made in retaliation for Sanders' 2020 performance review of Miranda, in which he rated her as "partially" meeting expectations. Regions alleges that Miranda's complaint raised numerous issues, including that Sanders made certain associates work unfavorable times, referred Regions' customers to his wife's mortgage business, came into work late, left early, took long lunches, and did personal business with a Regions IT support associate, Eric Johnson ("Johnson"), who had a side construction business. (Doc. No. 35 at 11). Shortly after Miranda's internal complaint was filed, Regions alleges that it interviewed Karen Mendez Rivadenayra ("Rivadenayra"), one of Sanders's direct reports, who stated that "once a month for about a year, Sanders…brought his personal money into the branch, exchanged it for new bills, asked his associates to keep his bills in their cashboxes, and bought back the original bills on payday." (*Id.* at 12). Associates were allegedly instructed by Sanders to "record his bills on their cashbox balance sheets as 'miscellaneous.'" (*Id.*). Regions alleges that Sanders was, in effect, "treating Regions' cashboxes like a pawn shop." (*Id.*).

Meanwhile, Sanders submitted his January 2021 expense report, which Leonard reviewed and found charges he thought were "odd," including mileage reimbursements for performing due diligence on five businesses apparently without formal requests from Regions. Leonard asked

---

[1] Plaintiff incorporates by reference his Response to the initial Motion, including the evidence cited. (Doc. No. 39). Likewise, Regions's Motion for Summary Judgment Instanter incorporates its initial Motion for Summary Judgment. (Doc. No. 35). Thus, the Court will cite to the initial Motion, Response, and respective evidence where appropriate.

2

Sanders for the names of the business visited, and Sanders allegedly "provided five business names, most located at significant distances from Sanders' Sugar Land branch." (*Id.* at 13).

On February 11, 2021, Leonard arrived unannounced at Sanders's branch. Sanders alleges that Leonard "stood in close proximity" to Sanders while he logged into his computer, acting "as if [Sanders] was violating bank policies or tending to personal duties while on the clock." (Doc. No. 1-3 at 6). Leonard then informed Sanders that they were scheduled to have a phone conference with Human Resources. Shortly thereafter, Sanders, Leonard, and Human Resources representative Melody Bodine ("Bodine") participated in a telephone conference in which Bodine explained that an anonymous complaint had been made against Sanders. According to Regions, Sanders "described Miranda negatively," admitted his wife had a mortgage business but denied referring Regions customers to her business, and, in response to the cashbox allegations, described himself as a "numismatist," or someone who collects and studies currency. (Doc. No. 35 at 13). Regions further alleges that Sanders "mentioned his family member was financially struggling, so he brought in $300 from his personal money collection and exchanged it for $100 bills; asked an associate to hold his original bills; then exchanged other bills he had for his original bills on payday." (*Id.* at 14). When asked why he did not help his family member with the money he had, Regions alleges that Sanders "did not answer and deflected," and, "to him, it was no different than when a bank's vault retains new bills." (*Id.* at 14).

On February 18, 2021, Sanders filed a complaint with Regions's Human Resource office. (Doc. No. 39-1 at 183–86). Sanders's complaint alleges Leonard discriminated against him based on his race, age, and health conditions, and that both Leonard and Miranda were retaliating against him. (*Id.* at 184). On February 19, 2021, Bodine emailed Sanders to inform him that she forwarded his discrimination concerns to another Human Resources representative, Nicole Cooper

3

("Cooper") for investigation. (*Id.* at 182). On February 26, 2021, Cooper called Sanders. Sanders alleges that the call "transitioned from inquiry to interrogation[]." (Doc. No. 1-3 at 7). Sanders claims that "it was obvious that their 'inquiry' was bias [sic] and in place to protect Regions and not research the incidents and occurrences reported by [Sanders]." (Doc. No. 1-3 at 7). Sanders further alleges that in the weeks following the phone call with Cooper, he experienced continued "investigation and retaliation" by Regions. (*Id.*).

While the investigation was ongoing, Miranda filed a second discrimination claim against Sanders with Regions' Human Resources Department. Miranda claimed that Sanders had approved bereavement leave when another employee's aunt died, but denied bereavement leave for the death of her aunt. Regions claims that it does not include aunts in its bereavement leave policy; when asked about this (given that he coded the other employee's leave as a "parent in law"), Regions claims that Sanders "said he made a mistake…and did not realize he could not correct it after the fact." (Doc. No. 35 at 17).

Regions alleges that, on or about March 25, 2021, Leonard decided to terminate Sanders's employment. (*Id.* at 18). On May 28, 2021, Sanders filed an EEOC charge against Regions, alleging race discrimination and retaliation.[2] After a surprise visit to his branch for an "audit" conducted by Leonard and Meghan Wernecke ("Wernecke"), Regions's Regional Operation Manager, Regions officially terminated Sanders's employment on June 3, 2021. Regions cited several reasons for Sanders's termination, including: "(1) poor performance/management for inconsistently applying Regions' bereavement policy; (2) violating Regions' Transaction Processing Manual – Branch Current & Coin – Coin and Currency Collection related to pawning bills in cashboxes; (3) misapplying the Associate Expense Reimbursement Policy related to EDD;

---

[2] Sanders later amended his EEOC charge to include a hostile work environment claim. (Doc. No. 39-1 at 110).

4

and (4) violating Regions' Code by failing to disclose an outside activity, his rental properties." (*Id.* at 17–18). Finally, Regions notes that "most significantly, Sanders also violated Regions' Code by presenting shifting explanations and untruthful communications to Regions during the investigation," which called his "credibility and trustworthiness as a Branch Manager into question." (*Id.*). Sanders argues that race was a motivating factor in Regions's decision to terminate him, and that he was terminated in retaliation for engaging in protected activity.

Sanders first stated causes of action for race discrimination and retaliation under the Texas Human Rights Commission Act ("TCHRA")[3] stemming from his termination and Regions's failure to promote or hire him to another Branch Manager Position. Additionally, Sanders alleges that severe discrimination and harassment while at Regions "unreasonably interfered with his work performance" and that he was subjected to a hostile work environment under the TCHRA.

Regions initially moved for summary judgment on Plaintiff's race discrimination and retaliation claims. *See* (*id.*). The Court granted Defendant's motion. (Doc. No. 49). The Court then granted Regions's Motion to file Summary Judgment Instanter on Plaintiff's remaining claim—hostile work environment—which is now before the Court. (Doc. No. 53).

## II.   Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

---

[3] The provisions of the TCHRA are outlined in Chapter 21 of the Texas Labor Code. *See* TEX. LABOR CODE ANN. § 21.001.

5

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specifie facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III.   Analysis

Though Plaintiff claims that Defendant violated the TCHRA, the law governing claims under the TCHRA and Title VII is identical. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018). Thus, the Court may use federal cases interpreting Title VII to interpret the TCHRA. *See Shackelford*, 190 F.3d at 404 n.2.

Sanders alleges that he was subjected to a hostile work environment "based on his race and participation in protected activity." (Doc. No. 55 at 14). Regions argues that Sanders stated a "retaliatory hostile work environment claim" against them, which the Fifth Circuit has not recognized. *See Heath v. Bd. of Supervisors for S. U. and Agric. and Mech. College*, 850 F.3d 731,

741 n.5 (5th Cir. 2017), as revised (Mar. 13, 2017) ("We have not recognized a retaliatory hostile work environment cause of action."). In response, Sanders states that "[w]hile the Fifth Circuit has not recognized retaliatory hostile work environment claims, twelve other circuits have" and "[a]s such, district courts in this circuit typically proceed as if such a claim exists." (Doc. No. 55 at 12). While Sanders's Complaint separates claims for hostile work environment and retaliation into different headers, delineating different causes of action, Sanders alleges he experienced a hostile work environment due to retaliation based on his participation in a protected activity. (Doc. No. 55 at 14). To the extent that Plaintiff's claim against Regions is premised on a "retaliatory hostile work environment," the Fifth Circuit has not recognized that cause of action and the Court dismisses that cause of action, if any.

To state a hostile work environment claim, "the plaintiff must show that: (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action." *EEOC v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). Sanders must make a sufficient showing that a genuine issue of fact exists, or conclusively establish, all five elements. *See Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 404 (5th Cir. 2021). Only elements (3), (4), and (5) are contested in this case.

Sanders alleges Regions required Plaintiff to "work in a discriminatorily hostile and abusive environment permeated with discriminatory intimidation, ridicule, and insult that was frequent and severe and was physically threatening or humiliating." (Doc. No. 1-3 at 12). Yet, Plaintiff's Response to the Motion does not involve "intimidation, ridicule, and insult." Instead, Plaintiff states that:

> Regions' employees subjected Plaintiff to a racially hostile work environment when Regions failed to provide Plaintiff with the same or similar promotion opportunities and conspired to make it appear that Plaintiff violated numerous policies, to justify the termination of Plaintiff's employment and to forego investigating Plaintiff's internal complaint of race discrimination and disparate treatment.

(Doc. No. 55 at 5).

As an initial note, the Court previously held that Sanders failed to meet his burden to establish a *prima facie* case of race discrimination under the TCHRA. (Doc. No. 49 at 11). Defendant contends that this precludes Plaintiff's hostile work environment claim because that claim is "really derivative of his race discrimination claim." (Doc. No. 53 at 5). The Court disagrees. The Court granted Defendant's summary judgment regarding Plaintiff's race discrimination claim because Sanders failed to present sufficient evidence that he was treated less favorably than others who were similarly situated but outside the protected class—an element of his TCHRA racial discrimination claim. (Doc. No. 49 at 11). Conversely, comparator evidence is not required for a hostile work environment claim.[4] Thus, the Court finds that the dismissal of the race discrimination claim is not dispositive of Plaintiff's hostile work environment claim.

The Court will discuss each of the contested elements in turn.

### A. Based on a protected characteristic

The Fifth Circuit has explained that "in the context of" more obvious evidence of religious discrimination, a factfinder could conclude that a harasser's [otherwise innocuous action], though not overtly tied to animus, "was also motivated by" prejudice toward a protected characteristic. *WC&M Enters., Inc.*, 496 F.3d at 400–01. In *Johnson v. PRIDE Industries*, the Fifth Circuit found that "in the context of" verbal harassment towards the plaintiff (including referring to the plaintiff

---

[4] Sanders does not, in fact, allege or provide evidence that other similarly situated Regions employees were not harassed in the workplace or discriminated against by Leonard. He also does not supply evidence that others who share the same protected characteristic(s) were subject to the allegedly hostile environment.

by inherently derogatory and demeaning terms), the court could infer that actions such as alleged interference with the plaintiff's efforts to obtain a promotion were motivated by racial animus. *Johnson*, 7 F.4th at 403 (citing *Cole v. Bd. of Trustees of N. Ill. Univ.*, 838 F.3d 888, 896 (7th Cir. 2016) ("[F]orms of harassment that might seem neutral in terms of race . . . can contribute to a hostile work environment claim *if* other evidence supports a reasonable inference tying the harassment to the plaintiff's protected status.") (emphasis added).

As noted above, Sanders bases his hostile work environment claim on three events that he asserts were racially motivated. Sanders asserts that, because of his race, Regions: 1) failed to provide Plaintiff with the same or similar promotion opportunities; 2) conspired to make it appear that Plaintiff violated numerous policies to justify the termination of Plaintiff's employment; and 3) forewent investigating Plaintiff's internal complaint of race discrimination and disparate treatment. (Doc. No. 55 at 5). Unlike *Johnson*, Sanders has not provided any evidence that would allow the Court to infer that seemingly innocuous actions were motivated by racial animus. Instead, Sanders states that he "would not have been recommended for termination if he was non-African American" and that he feels like he was discriminated against. (Doc. No. 55 at 12; Doc. No. 39-1 at 28, 30). The Court finds that Sanders did not provide any evidence of racial animus—only that Plaintiff believes that he was discriminated against. *See Smith v. Harvey*, 265 F.App'x 197, 202 (5th Cir. 2008) (The plaintiff "has failed to satisfy the third prong because he has produced no evidence that these incidents were race-based other than his own subjective opinion.").

Moreover, Plaintiff attempts to distinguish the case at bar from *West v. Honeywell*. *West v. Honeywell Int'l Inc.*, 558 F. Supp. 3d 369, 379 (S.D. Tex. 2021). In *West*, the district court granted summary judgment after finding that the plaintiff presented no evidence that any of the alleged

9

harassment was based on plaintiff's membership in a protected class. *Id.* at 379. Sanders states that "[u]nlike the *Honeywell* case, Plaintiff has alleged the harassment was based on his race and protected activity." (Doc. No. 55 at 18). The Court notes that alleging that harassment is based on a protected class is not equivalent to presenting evidence. Still, in its review of the portions of the record cited by the parties, the Court did not find any evidence suggesting that the alleged harassment was based on Plaintiff's race. Plaintiff's subjective belief is not sufficient to meet his burden in establishing a prima facie case of hostile work environment.

### B. Affecting a term, condition, or privilege of employment

Nevertheless, even if the Court did find that Plaintiff met his burden for element three, Plaintiff still fails to meet his summary judgment burden regarding element four. For harassment to affect a term, condition, or privilege of employment, as required by element four above, the harassment must be "sufficiently severe or pervasive," meaning "the conduct complained of must be both objectively and subjectively offensive." (*Id.*). To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Supreme Court has made clear that "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

First, Sanders cannot show that his alleged harassment was frequent or pervasive. Although Plaintiff states that the alleged actions "have a cumulative effect of discrimination, not any discrete occurrence," and that the alleged discriminatory events were "frequent," Plaintiff's conclusory assertions are not sufficient. (Doc. No. 1-3 at 12; Doc. No. 55 at 20). The complained of acts are

isolated or infrequent events—such as Plaintiff's failure-to-promote claim and Regions's alleged failure to fully investigate his internal discrimination claim. Sanders's seemingly alleges that both are continuous acts of discrimination because "Leonard continuously conducted the interviews" after Leonard "created his own subjective beliefs without any due diligence as to whether his belief was credible." (Doc. No. 55 at 19). Plaintiff does not point the Court to any evidence to support these claims, and the Court can find none on its own examination of the evidence. Sanders also states that he has provided evidence that "other similarly situated employees outside his protected class with similar internal complaints, received more information and were more inclusive in their investigation." (Doc. No. 55 at 19). Again, the Court finds no evidence to support this claim. Without more, the Court finds that an alleged failure to investigate his internal claim is not sufficiently frequent or pervasive.

Regarding the other complained of conduct—that Regions's alleged conspired to make it appear that Plaintiff violated numerous policies to justify the termination of Plaintiff's employment—Sanders provides no evidence of its frequency. Sanders concludes that the behavior was frequent or pervasive because "Ms. Miranda was known to brag around the office that she was fabricating a list against Plaintiff in collusion with Mr. Leonard." (Doc. No. 55 at 19). Plaintiff, however, does not even estimate how many times that conduct occurred. *See Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (finding that conduct was not pervasive when the plaintiff "did not even estimate how many times [the] conduct occurred"). Moreover, Defendant objected to the "evidence" Plaintiff cites to support his conspiracy allegations. (Doc. No. 57). Plaintiff cites to portions of Sanders's deposition where he recites what he was told from other Regions employees. (Doc. No. 55 at 8). The Court sustains Defendant's

objections as to hearsay.[5] As such, the Court cannot rely on the only "evidence" cited by Plaintiff to support this claim, and the Court finds none upon independent examination of the summary judgment record. Thus, the Court finds that this factor weighs against finding that Plaintiff's work environment was objectively offensive.

Sanders also fails to meet the second and third factors: that the alleged actions were severe, physically threatening, or humiliating. *See Harris*, 510 U.S. at 23. Though Plaintiff's Complaint states that the complained of conduct was "physically threatening or humiliating," Plaintiff has not provided evidence that supports that assertion. (Doc. No. 1-3 at 12). The Court does not find any evidence that Sanders was physically threatened. Sanders alleges that it was humiliating "to be investigated in front of his peers for baseless allegations."[6] Sanders seeks to impose liability on his former employer because his supervisor and a human resources representative questioned him, in private, regarding conduct that they suspected was against company policy. That is not severe or humiliating under the governing standards that require the conduct to be extreme.[7] *See Faragher*, 524 U.S. at 788 (1998). The Court finds that this factor weighs against finding that Plaintiff's work environment was objectively offensive.

---

[5] The Court's ruling applies specifically to Defendant's objection to the deposition testimony cited by Plaintiff in support of this allegation. (Doc. No. 55 at 8 n.13).

[6] Sanders claims that "[e]vidence that Regions' investigation did not uncover violations of the self-dealing policy, or that Plaintiff owned or operated his wife's mortgage business; and that Plaintiff was being honest throughout the investigation; demonstrates that the harassment he suffered was humiliating to be investigated in front of his peers for baseless allegations. Such circumstances suggest Plaintiff did not actually violate any policy, especially since Ms. Miranda was known to brag around the office that she was fabricating a list against Plaintiff in collusion with Mr. Leonard." (Doc. No. 55 at 19).

[7] Even if the Court found that the alleged conduct was race-based, incidents far more severe than those alleged here have been held by the Fifth Circuit to not support a hostile work environment claim. *See, e.g., Mosley v. Marion County*, 111 Fed.App'x. 726, 728 (5th Cir. 2004) (unpublished) (holding that evidence of three incidents involving racial slurs was insufficient to support a hostile work environment claim); *Pickens v. Shell Tech. Ventures, Inc.*, 118 Fed.App'x. 842, 850 (5th Cir. 2004) (unpublished) (holding that a company Christmas party where a skit with characters in blackface was performed and racially insensitive comments were made to plaintiff did not create a hostile work environment).

Lastly, Sanders asserts "Defendant's investigation into Plaintiff with baseless violations of policy interfered with the terms and conditions of his employment when he was terminated thereafter." (Doc. No. 55 at 20). While an investigation into Plaintiff's alleged misconduct may have inhibited his work at times, and Plaintiff provided evidence that Defendant did terminate Sanders after allegedly substantiating the claims against him, the Court finds that this factor does not outweigh the other three factors under a totality of the circumstances analysis.

After considering the totality of the circumstances using the *Harris* factors, the Court finds that the conduct complained of is not objectively offensive. *See Harris*, 510 U.S. at 23. Thus, the alleged harassment is not "sufficiently severe or pervasive" for the conduct to affect a term, condition, or privilege of employment. Sanders has failed to meet his burden to raise a genuine issue of material fact on an element of his hostile work environment claim.

### C. Regions's knowledge and failure to take prompt remedial action

The parties also dispute whether Regions knew or should have known of the harassment and failed to take prompt remedial action, as required by element five of the hostile work environment claim. Plaintiff provided evidence that he notified Regions of the harassment. On February 18, 2021 (months before Sanders's termination) Sanders reported that he was being discriminated against by Leonard based on his "race, age, and health conditions" to Regions's Human Resources Office of Conduct. (Doc. No. 39-1 at 184). Thus, Sanders has met his burden to raise an issue of material fact with respect to the knowledge requirement of element five of his hostile work environment claim, but the need to take remedial action is only triggered if the complained of acts were actually harassing in nature.

Still, Sanders has failed to meet his burden to raise a genuine issue of material fact on multiple elements of his hostile work environment claim—that the alleged harassment was based

on a protected characteristic and that it affected a term, condition, or privilege of employment. In short, the most Sanders has shown is that he subjectively believes he was discriminated against, which he alleges caused a hostile work environment. The governing law does not impose a "general civility code" on employers. *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

## IV.  Conclusion

Therefore, the Court **GRANTS** Regions's Motion for Summary Judgment in its entirety. (Doc. No. 53). As the last remaining claim, this matter is hereby dismissed with prejudice.

Signed at Houston, Texas, on this the __16th__ day of December 2024.

Andrew S. Hanen
United States District Judge